# Illinois Official Reports

## Appellate Court

---

**Battaglia v. 736 N. Clark Corp.**, 2015 IL App (1st) 142437

---

| | |
|---|---|
| Appellate Court Caption | GINO BATTAGLIA and BERNADETTE BATTAGLIA, Plaintiffs-Appellees, v. 736 N. CLARK CORPORATION, d/b/a 25 Degrees, an Illinois Corporation, Defendant-Appellant (All Unknown Occupants, Defendants). |
| District & No. | First District, Second Division<br>Docket No. 1-14-2437 |
| Filed | December 22, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M1-717780; the Hon. Martin P. Moltz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Fuksa Khorshid, LLC, of Chicago (Thomas D. Carroll and Lema A. Khorshid, of counsel), for appellant.<br><br>Golan & Christie LLP, of Chicago (Robert R. Benjamin, Beverly A. Berneman, and Anthony J. D'Agostino, of counsel), and Dordek, Rosenberg & Associates, P.C., of Skokie (David S. Dordek, of counsel), for appellees. |

Panel                        PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justice Neville concurred in the judgment and opinion.
Justice Hyman dissented, with opinion.

**OPINION**

¶ 1       Plaintiffs, landlords Gino and Bernadette Battaglia filed this forcible entry and detainer action claiming breach of commercial lease by their tenant, defendant 736 N. Clark Corp. d/b/a 25 Degrees. Following a bench trial, the court entered a "split decision" awarding plaintiffs $4,021 in damages for defendant's breach of the lease and denied an order of possession requested by plaintiffs. Defendant appeals this judgment. For the following reasons, we affirm.

¶ 2                                  BACKGROUND

¶ 3       On March 7, 2011, the parties entered into a five-year triple net lease (Lease) for a one-story commercial property located at 736 N. Clark Street, Chicago, IL 60654 (Property), to be used as a restaurant. In addition to the rent, the Lease requires the tenant, defendant 736 N. Clark Corp., to pay "[a]ll building expenses, costs and taxes, real estate and otherwise, fees, insurance and other monetary burdens levied against the property."

¶ 4       In 2012, the Property was reassessed, resulting in a tax increase. As the Property's owners, plaintiffs hired an attorney to appeal the assessment and anticipated tax increase. The successful appeal resulted in property tax savings of $16,085. Plaintiffs were invoiced $4,021 for attorney fees incurred in the appeal. On May 16, 2013, plaintiffs sent defendant's owners an email requesting reimbursement for the attorney fees. Defendant neither responded to the email nor paid the attorney fees.

¶ 5       On June 18, 2013, plaintiffs served defendant with a five-day notice, demanding defendant pay the attorney fees in full by June 23, 2013, or face eviction proceedings. Although the Lease identified a separate address for delivering notices, plaintiffs sent the five-day notice to defendant at the Property via regular United States Mail.

¶ 6       On June 20, 2013, defendant, through counsel, requested clarification of the payment demand from plaintiffs' attorney. Plaintiffs' attorney responded, confirming the attorney fees incurred resulted in property tax savings benefitting defendant and that plaintiffs' payment demand was ongoing. Although defendant has continued to pay its monthly rent and taxes, it has not paid the attorney fees incurred in the property tax appeal.

¶ 7       On July 31, 2013, plaintiffs filed this forcible entry and detainer action. Plaintiffs alleged the attorney fees incurred in the property tax appeal constituted "additional rent" under section 4.3(a) of the Lease, and that defendant breached the Lease by not paying the fees. Plaintiffs sought monetary damages and possession of the Property.

¶ 8       Section 4.3 of the Lease identifies the tenant's obligations to pay "additional rent." It reads:

        "4.3 (a) ADDITIONAL RENT. All building expenses, costs and taxes, real estate and otherwise, fees, insurance costs, licenses and other monetary burdens levied against the property.

4.3(b) Monthly Installments: \*\*\* In addition to monthly installments of Fixed Minimum Rent, Tenant's pro rata share of all such real estate taxes and assessments (said items being hereinafter referred to collectively in Section 4.3 Additional Rent) shall be paid in monthly installments on or before the first day of each calendar month during the Lease term, in advance, in an amount equal to 100% of the previous year's actual costs. Upon determination of the actual amount of the Section 4.3 Additional Rent for any lease year, Landlord shall furnish Tenant with a written statement calculating and allocating the amount thereof and the amount of Tenant's pro rata share."

¶ 9　A four-day bench trial was held on plaintiffs' claims. At trial the parties disputed whether the "additional rent" provision required defendant to pay the demanded attorney fees; whether plaintiffs should have prorated the disputed fees, rather than demanded a lump sum payment; and whether the five-day notice strictly complied with the Lease's notice provisions.

¶ 10　Plaintiffs contended section 4.3(a) was a broad provision which included the attorney fees as "additional rent," and that their notice to defendant was timely and proper. At trial, plaintiff Gino Battaglia testified the Lease was a triple net lease negotiated by the parties' attorneys. At the time of the Lease execution, Gino understood plaintiffs were "only responsible for the outer walls and the roof" and defendant was "responsible for everything else" relating to the Property. He understood section 4.3(a) of the Lease established defendant would "pay for everything concerning the building, taxes, or anything related to the taxes," especially "any reduction in taxes \*\*\* [which] really benefits the tenants." During lease negotiations, defendant's attorney sent an email to Gino's attorney, asking, "[w]hat does additional rent entail besides taxes?" Gino's attorney responded "[a]s I said, additional rent is everything and anything that is charged against the premises. \*\*\* You wanted me to take away three paragraphs and replace [them] with a short statement. So the short statement is everything. As far as when you shift pay."

¶ 11　Upon signing a lease, it was Gino's practice to verbally inform tenants that, as a benefit to them, he would appeal any real estate tax increase on the Property. In 2012, the Property was reassessed and the property taxes were raised. Gino hired an attorney who successfully secured a revised assessment, resulting in tax savings of $16,085. Gino received an invoice for $4,021 for attorney fees incurred in the appeal. Three days later, he emailed an invoice to Josef Boumaroun, one of defendant's owners, and asked for reimbursement of the attorney fees. On cross-examination, Gino explained that he brought the tax appeal to save the tenant money. He further admitted he should have charged defendant a prorated monthly amount for the $4,021 in additional rent instead of demanding a lump sum payment.

¶ 12　Defendant contended the tax appeal attorney fees did not constitute "additional rent" under the Lease. Additionally, the payment demand was improper because plaintiffs had not complied with the Lease's notice or *pro rata* apportionment requirements, instead demanding a lump sum payment. According to defendant, the final demand letter had arrived in the mail after the five-day notice period ended, invalidating any tenancy termination. Therefore, plaintiffs' noncompliance with the Lease's notice provisions invalidated any claim of contract damages or Lease termination.

¶ 13　Defendant's owners, Josef Boumaroun and Matthew Boumaroun, testified for defendant. Josef testified that he was involved in the lease negotiations and that he understood "additional rent only meant property taxes." He held this belief even after plaintiffs' attorney identified

"additional rent" as "everything and anything" because when he asked plaintiffs' attorney for a "detailed description of the history of what has happened in the past, [the plaintiffs' attorney] kept sending us tax bills." Josef did not know Gino hired an attorney to appeal the tax increase. Josef expected Gino to prorate additional rent amounts in monthly installments and was "shocked" when he received the invoice and request for a lump sum payment. He did not pay the invoice because there was no breakdown of the amount billed and he wanted to confirm he was responsible for its payment. He also testified it was not his "job to go and try to obtain property tax savings," and he knew at some point plaintiffs would seek a reduction of the Property's real estate taxes.

¶ 14 On cross-examination, Josef testified he was happy about the $16,000 tax savings obtained through the tax appeal and considered it a benefit to defendant. He did not recall Gino discussing his general policy of appealing property tax increases, but he thought the Lease may have mentioned it.

¶ 15 Matthew Boumaroun testified that plaintiffs' attorney explained the tenant is responsible for "everything and anything that is charged against the premises." Matthew understood this to mean "a levy against the property," not legal fees incurred by Gino. Matthew was personally served with the five-day notice. He testified he did not know Gino hired an attorney to challenge the tax increase and he did not know defendant could be responsible for the tax attorney fees.

¶ 16 Following closing arguments, the trial court entered a "split decision" granting judgment in favor of plaintiffs on the breach of lease claim, but ordered that possession of the Property remain with defendant because the breach did not warrant eviction. The court also ordered each party to bear its own costs and attorney fees incurred in litigating this dispute.

¶ 17 The trial court found section 4.3(a) was a "catchall phrase *** [which] so many of the contracts we see here in this court are like." The court explained that if the contract had "laid out *** 25 different things that would be covered rather than a catchall [provision]" and there was no mention of attorney fees, then the court may have found attorney fees did not constitute "additional rent." However, this Lease's "additional rent" definition was broad enough to include these attorney fees. As for the procedural defects in plaintiffs' five-day notice and payment demands, the court stated "none of the *** procedural defects that have been argued *** [are] a major factor here. So *** I do think that under the contract that money is owed."

¶ 18 The trial court also found the Lease did not specify when defendant must pay the demanded "additional rent" and decided "to rule that [the payment] can be a reasonable proration. And that's something that the parties *** can decide on their own." After a recess, plaintiffs' counsel informed the trial court that the parties "didn't come to an exact agreement" and "we decided maybe we would leave it to [Y]our Honor's good sense." Plaintiffs' counsel then requested a 3-month proration term and defendant's counsel requested 12 months to pay the judgment. The trial court ordered defendant pay the $4,021 judgment over a five-month period. The trial court granted what it considered a "split decision" that favored neither party and, therefore, "since *** both sides have prevailed on a key issue, *** I don't think it would be appropriate to award any attorneys' fees to either side." Defendant's timely filed appeal followed.

¶ 19                                  ANALYSIS

¶ 20     On appeal, defendant contends the trial court erred in finding: (1) the attorney fees incurred by the tax appeal constitute additional rent under the Lease; and (2) plaintiffs' claim is not barred by their failure to comply with the Lease's proration and notice requirements.

¶ 21     First, defendant argues the trial court erred in finding section 4.3(a) of the Lease includes attorney fees incurred by the property tax appeal.

¶ 22     The parties disagree on our standard of review. Plaintiffs argue we should review the judgment under the manifest weight of evidence standard. Defendant, however, argues we should apply *de novo* review.

¶ 23     The manifest weight of evidence standard is generally used to review a judgment after a bench trial (*Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004)) because the trial judge, as a trier of fact, is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995). Under this standard, we affirm the trial court's judgment unless it is against the manifest weight of the evidence. *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542 (1998). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). Whereas, under *de novo* review, the appellate court analyzes issues of law as if they were new issues, giving no deference to the judge's conclusions or rationale. *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 79. *De novo* review is appropriate when a contract is clear and unambiguous as to the parties' intent. *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 493 (1993); *Hassebrock*, 2015 IL App (5th) 140037, ¶ 79; *Dow v. Columbus-Cabrini Medical Center*, 274 Ill. App. 3d 653, 659 (1995). However, where the trial court determines an ambiguity exists in a contact, the trial court's subsequent construction of the contract will not be disturbed by a reviewing court, unless it is against the manifest weight of the evidence. *Dow*, 274 Ill. App. 3d at 659.

¶ 24     On appeal, defendant contends the trial court erred in construing the contract's definition of "additional rent" to include the property tax appeal fees. Therefore, the question on appeal is whether the trial court properly construed the Lease, which we will not reverse unless the judgment is against the manifest weight of the evidence. See *id*.

¶ 25     Defendant argues "additional rent" does not include the tax appeal attorney fees because the plain language of the Lease does not provide for such reimbursement. Although fee shifting for tax appeal fees are common in commercial leases, the parties could have, but chose not to, specifically provide for it. The "additional rent" provision in the Lease involves expenses levied against the Property–"taxes, real estate and otherwise" and "[a]ll [other] building expenses," "costs" "insurance costs" and "fees." These terms were intentionally broad and any ambiguity that existed as to how broad the terms were or what was included in those terms was addressed by the testimony of both plaintiffs and defendant. In other words, the parties put before the trial court the ambiguity of whether attorney fees were a cost to be paid by the defendant that was within the contemplation of the parties when they entered into the Lease.

¶ 26     Section 4.3(a) of the Lease provides the tenant has an obligation to pay for "additional rent," which is defined as: "[a]ll building expenses, costs and taxes, real estate and otherwise, fees, insurance costs, licenses and other monetary burdens levied against the property."

¶ 27    The primary objective of contract interpretation is to effectuate the parties' intent when entering into the agreement. *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 493 (1993). Here, the evidence shows that during lease negotiations, the parties rejected a narrow definition in favor of a "catchall" provision. Such intent was expressed by the request of defendant's attorney for a description of "additional rent." Plaintiffs' attorney responded to the request explaining that "additional rent is everything and anything that is charged against the premises. [Defendant's attorney] wanted me to take away three paragraphs and replace it with a short statement. So the short statement is everything." This evidence supports the conclusion that the parties' attorneys' intentionally crafted section 4.3(a) as a catchall provision. As such, the parties were exposed to a later reasonable dispute about what was included in "additional rent."

¶ 28    Further, the Lease provides that defendant is responsible for all costs, taxes, fees and "other monetary burdens levied against the property." It reasonably follows that the attorney fees at issue are included as a "fee" or "cost" contemplated in the "additional rent" provision. Defendant is responsible for paying the Property's real estate taxes and the parties' testimony explains any ambiguity of whether attorney fees incurred in contesting the Property assessment as a fee in the context of "additional rent." Gino Battaglia testified that he believed the landlord is responsible only "for the outer walls and the roof, and the tenants were responsible for everything else." When signing leases with his tenants he informs them that, as a benefit to them, he would appeal any real estate tax increase. In the end he believed defendant would pay the fees relating to the tax reduction because defendant is otherwise responsible for paying the property taxes. Josef Boumaroun, one of defendant's co-owners, testified that although defendant was responsible for paying real estate taxes, it was not his "job to go and try to obtain property tax savings" and claimed he knew plaintiffs would eventually attempt to reduce those taxes.

¶ 29    We find the record supports the trial court's finding that the attorney fees at issue constitute "additional rent." According to the Lease, defendant was responsible for paying the Property's real estate taxes. Josef knew at some point the landlord would seek a reduction of the real estate taxes, which defendant was responsible for paying, and it is reasonable to infer that Josef knew that plaintiffs would not do this for free and for his benefit. Plaintiffs, as the Property owners, sought and obtained a reduction of taxes that defendant would have otherwise had to pay. Therefore, the trial court's judgment was not unreasonable, arbitrary or against the manifest weight of the evidence that any cost of obtaining a tax reduction would be the obligation of the party that benefitted from the reduction. *Judgment Services Corp.*, 321 Ill. App. 3d at 154.

¶ 30    Defendant also argues that even if the tax appeal attorney fees constitute "additional rent," plaintiffs should not be permitted to recover the fees because plaintiffs' payment demand and notice did not comply with the Lease. Specifically, defendant claims: (1) plaintiffs sent the five-day notice to defendant at the premises, instead of sending it to the address listed in the Lease's notice provision; and (2) plaintiffs improperly demanded repayment in one lump sum, rather than in a *pro rata* apportionment.

¶ 31    Gino testified that he should have prorated reimbursement of the fees and that the notice was sent to defendant at the premises instead of the address listed in the Lease. The trial court found the procedural defects were not a "major factor" and that the money is still owed under the Lease. The trial court entered a "split decision," finding in favor of plaintiffs for the money owed, but in favor of defendant on the issue of possession. Essentially, the trial court's finding

recognized both parties' breach of the Lease and a judgment was entered in favor of each party on an issue. Accordingly, we do not find the trial court's judgment is unreasonable or against the manifest weight of the evidence and affirm on this basis. We also note that, even if the court ruled the failure to comply with the notice provision was material and sufficient to defeat recovery in this lawsuit, that would not preclude plaintiffs from starting over, complying with the lease notice provisions and demanding the same fees in a different lawsuit. In short, our decision should result in the termination of this dispute and the end of additional legal expenses to all the parties, especially the defendant.

¶ 32    Next, defendant argues the trial court erred in ordering the sum be paid over 5 months rather than 12 months.

¶ 33    Section 4.3(b) of the Lease provides in pertinent part that:

"In addition to monthly installments of Fixed Minimum Rent, Tenant's pro rata share of all such real estate taxes and assessments (said items being hereinafter referred to collectively in Section 4.3 Additional Rent) shall be paid in monthly installments on or before the first day of each calendar month during the Lease term, in advance, in an amount equal to 100% of the previous year's actual costs. Upon determination of the actual amount of the Section 4.3 Additional Rent for any lease year, Landlord shall furnish Tenant with a written statement calculating and allocating the amount thereof and the amount of Tenant's pro rata share."

¶ 34    The trial court found section 4.3(b) does not give express direction to prorate the attorney fees. However, the trial court ruled defendant's payment of the contract damages could be reasonably prorated. The trial court gave the parties the option of coming to an agreement on a proration. The parties could not come to an agreement and instead asked for the trial court's discretion in establishing a reasonable proration. Plaintiffs then requested a 3-month proration and defendant requested a 12-month proration. In return the trial court ordered a five-month proration, which was a compromise between both parties' requests. We find the trial court's decision to prorate the judgment over five months was neither unreasonable, arbitrary or against the manifest weight of the evidence (*Judgment Services Corp.*, 321 Ill. App. 3d at 154) and, therefore, we affirm.

¶ 35    Lastly, defendant argues it should recover attorney fees in defending the litigation because: defendant was a "prevailing party" on the issue of possession; and if we reverse the trial court's judgment, defendant is entitled to attorney fees for defending this litigation. As mentioned above, the trial court's judgment was a "split decision" which favored neither party. Because we affirm the trial court's split decision resulting in a judgment in favor of plaintiffs and defendant on separate issues, we affirm the trial court's denial of an award of attorney fees.

¶ 36                                         CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 38    Affirmed.

¶ 39    JUSTICE HYMAN, dissenting.

¶ 40    I disagree with the majority's decision to apply a manifest weight of the evidence rather than a *de novo* standard of review which applies to legal interpretation of a clear and

- 7 -

unambiguous lease provision such as section 4.3(a). Moreover, reading the lease as a whole, nothing suggests or implies that defendant pay as additional rent any portion of the landlord's attorney fees incurred in voluntarily pursuing a reduction in the Property's real estate taxes. Thus, I respectfully dissent.

¶ 41    First, as to the proper standard of review, typically, after a bench trial, a reviewing court employs the manifest weight of the evidence standard. *General Motors Acceptance Corp. v. Stoval*, 374 Ill. App. 3d 1064, 1071 (2007). But contract language and interpretation present a question of law that a reviewing court examines *de novo. Northwest Suburban Fellowship, Inc. v. Department of Revenue*, 298 Ill. App. 3d 880, 886 (1998) (construing the language of a lease involves a legal question); *NutraSweet Co. v. American National Bank & Trust Co. of Chicago*, 262 Ill. App. 3d 688, 694 (1994) ("The interpretation of a lease is a question of law, to be determined by the reviewing court independent of the trial court's judgment."). Here, the trial court should have relied on the plain and ordinary meaning of the words in section 4.3(a) and considered the Lease as a whole, and the hearing on the issue was of no consequence. *Fox v. Commercial Coin Laundry Systems*, 325 Ill. App. 3d 473, 475 (2001) (courts should adopt " 'a fair and reasonable interpretation based on consideration of all [the contract's] language and provisions' " (quoting *Shelton v. Andres*, 106 Ill. 2d 153, 159 (1985))). Accordingly, review should be on a *de novo* basis as it pertains to the interpretation of a lease.

¶ 42    In construing a lease whose terms are unambiguous, the court must enforce it as written, and " 'no court can rewrite a [lease] to provide a better bargain to suit one of the parties.' " *Housing Authority v. Lyles*, 395 Ill. App. 3d 1036, 1039 (2009) (quoting *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 349 (2000)). " 'There is a strong presumption against provisions that easily could have been included in the contract but were not.' " *Miner v. Fashion Enterprises, Inc.*, 342 Ill. App. 3d 405, 417 (2003) (quoting *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 925 (1990)).

¶ 43    As noted, section 4.3(a), states that "Additional Rent" includes "All building expenses, costs and taxes, real estate and otherwise, fees, insurance costs, licenses and other monetary burdens levied against the property." The trial court found that section 4.3(a) is a catchall provision and that use of the word "fees" is broad enough to include the attorney fees the plaintiffs incurred in appealing the property tax assessment. I disagree.

¶ 44    Not only does the plain language of the Lease state "fees" and not specify "attorney fees," but also the defendant could easily have included the phrase "attorney fees" in that section as stated multiple times throughout the Lease. For instance, section 8.2(b) addressing "negative covenants" provides that if the landlord is joined in a suit to foreclose a mechanic's lien, the "Tenant shall pay on a monthly basis for the Landlord's attorney's fees to defend the suit." And in section 10.1, addressing defaults by the tenant, the Lease provides that if the landlord should "at any time terminate this Lease for any default, breach, or failure of Tenant, **** it may recover from Tenant all damages *** including *** reasonable attorney's fees." Thus, when the landlord wanted to impose a duty on the defendant to pay attorney fees it did. The landlord's failure to do so in section 4.3(a) establishes that "attorney's fees" incurred in a property tax appeal were not intended to be considered "additional rent" under the Lease. Therefore, defendant's refusal to pay those attorney fees should not be deemed a breach of the lease.

¶ 45    Under the purported catchall provision, each of the enumerated items is necessary to property ownership and maintenance of a business on the property. Attorney fees incurred in

appealing property taxes do not fit within the general category which the provision defines as "monetary burdens levied against the property." Even a catchall provision must relate to the category of things to which it refers. See *Fort Dearborn Life Insurance Co. v. Holcomb*, 316 Ill. App. 3d 485, 496 (2000) (catchall provision should not be interpreted as expanding powers expressly limited elsewhere or subsuming all possible circumstances). Otherwise, as defendant asks, why list specific items in a given provision at all?

¶ 46        Furthermore, all of the items that amount to "monetary burdens levied against the property"–"building expenses," "costs and taxes, real estate and otherwise," "fees," "insurance costs," and "licenses,"–are necessary to achieve the purpose of the Lease. And, based on the majority's interpretation, presumably other professional fees related to the Property, including mortgage refinancing fees and accounting fees related to the property, could be sought from defendant. Worse yet, the majority's approach creates a Pandora's box whenever "fees" appears in a contract, potentially unleashing a squabble over silently intended meanings on the scope of the familiar and readily used word "fees" when the plain language, in context, suffices.