2020 IL App (1st) 190967-U

FIFTH DIVISION
March 16, 2020

No. 1-19-0967

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| AMANDA SHAKER and ADAM PETRZELKA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 2017 L 7786 |
| | ) | |
| JAMES BUTLER d/b/a JIM BUTLER CONSTRUCTION | ) | |
| and BUTLER CONSTRUCTION, INC., | ) | Honorable |
| | ) | Yvonne Coleman, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1   *Held:*   In this residential construction case, the court did not err in finding that defendant materially breached the contract's "time is of the essence" clause, notwithstanding defendants' contention that plaintiffs had waived that provision. However, a portion of the circuit court's award of damages was not supported by competent evidence. We reduce the damages award and affirm the judgment as modified.

¶ 2                              I. BACKGROUND

¶ 3   Amanda Shaker and her husband Adam Petrzelka (collectively "plaintiffs") filed a one-

count verified complaint for breach of contract against James Butler and his construction company

(collectively "Butler"). The complaint alleged that the plaintiffs incurred $33,651.17 in damages when Butler failed to timely complete renovations on their house.

¶ 4 Butler filed a counterclaim, alleging that the plaintiffs breached the contract by terminating him before he could finish the work. The circuit court referred the case to mandatory arbitration. See Ill. S. Ct. R. 86 (eff. Jan. 1, 1994); Cook County Cir. Ct. R. 25.1 (Dec. 1, 2014). After the arbitrator entered an award in Butler's favor, plaintiffs timely rejected the award. Plaintiffs twice moved to amend their complaint, seeking to add tort claims related to allegedly fraudulent documents produced in discovery. However, the court did not rule on those motions before trial.

¶ 5 At trial, Petrzelka testified that he and Shaker purchased a house in Oak Park, Illinois and entered a contract with Butler to renovate it. Butler was to be the general contractor and the renovations were to include electrical and plumbing updates, removal of several walls, and other upgrades. The contract, an unsigned copy of which was entered into evidence, included a start date of November 15, 2016 and a substantial completion date of March 31, 2017.[1] The contract price was $166,800, of which plaintiffs eventually paid a total of approximately $150,000.

¶ 6 Petrzelka testified that the plans called for certain windows to be bricked in. However, Butler's initial estimates did not include that work. Before the renovation began, Butler informed Petrzelka that the masonry work would cost extra. Petrzelka also testified that, during the renovations, plaintiffs decided that an additional wall should be removed, extra tile be installed, and several doors should be replaced. Petrzelka did not know how much time these changes added to the total project. There were no written "change orders" for these extra tasks.

---

[1] In the contract, the substantial completion date is listed as "3-31-2016". The parties agree that this is a scrivener's error and that the intended date was March 31, 2017.

¶ 7       Petrzelka testified that on February 2, 2017, the house failed a walk-through inspection. To remedy the issues, their architect had to draft new plans, which he completed by February 5. To pass inspection, a support beam needed to be installed over a widened doorway. Petrzelka testified that the failed inspection did not stop the renovation work. He testified that, between the time of the failed inspection and the resolution of the beam issue, Butler connected the water supply and installed windows and insulation.

¶ 8       The contract also included a clause stating that the "[t]ime limits stated in the Contract Documents are of the essence of the Contract." Petrzelka testified that the completion date was important to plaintiffs because they were planning on selling their old house and moving directly into the new one. Sometime after entering the contract with Butler, they listed and found a buyer for their old house and set a closing date of April 13, 2017. Throughout the course of the renovation, Butler repeatedly assured plaintiffs that he intended to meet the March 31 completion date. Nevertheless, within a few weeks of the scheduled completion date, it became clear to plaintiffs that the work would not be finished in time.

¶ 9       On April 3, 2017, three days after the scheduled completion date, Petrzelka requested an "updated timeline" from Butler. Butler replied in an email that a crew of painters was meant to start on April 10, and that the new target date was April 25. The email stated, in part, "I also know I'm over the date I said in the beginning, not because you added work. It's mainly because of different trades taking a little longer than others that went faster than expected." On April 8, plaintiffs put most of their personal property into storage at a cost of about $125 per day.

¶ 10      Petrzelka testified that, despite Butler's assurances that a "whole crew of painters" would begin work on the house on April 10, when he visited the house that day, nobody was working.

By the end of that week, only a single painter had done any work on the property. Petrzelka received another email from Butler stating that the painters would begin in earnest on April 17.

¶ 11    On the morning of April 17, Petrzelka again visited the house. He found that only two painters were working and that they did not have any paint with them; they were simply filling nail holes. He contacted Butler by text message and informed him that he had decided to terminate the contract. Two days later, Shaker's father, an attorney, sent a letter to Butler memorializing the termination.

¶ 12    Petrzelka testified that a great deal of work remained to be done on the house after the termination. Among other things, the unfinished work included painting, installing light fixtures and electrical outlets, connecting appliances and air conditioning units, connecting the water and installing plumbing fixtures, and finishing some windows. To complete that work, Petrzelka hired various contractors, including painters, electricians, and plumbers, and performed some work himself. Plaintiffs were finally able to move into the house on June 23, 2017, nearly three months after the contractual substantial completion date.

¶ 13    Petrzelka testified that he hired other contractors and spent approximately 350 hours of his own time to finish the renovations. He testified that "between what [he] paid the subcontractors plus materials that [he] had purchased to finish the work was just over $33,000."[2] He also testified that the contract allotted $20,000 for "Basement Finish". When asked whether "that project" was completed, he answered, "It was not." The only other testimony about the work done (or left

_____

[2] When testifying about the cost to complete the renovations, Petrzelka referred to group exhibits "consisting of combination of receipts [plaintiffs] got back from subcontractors [they] had hired to help finish the work, in addition to receipts for materials that [he] had purchased *** to complete the home". Those exhibits were also referenced in plaintiffs' posttrial brief. However, the exhibits were not entered into evidence, do not appear in the record, and are not mentioned in the briefs on appeal.

undone) in the basement was Petrzelka's statement that "while they were doing the work on the basement, they had poured a whole new basement floor."

¶ 14    The contract included two provisions for termination by plaintiffs. Under certain circumstances, including in the event of a "substantial breach" by Butler, plaintiffs could terminate the contract "for cause." In such a case, plaintiffs had to "consult[] with the Architect" and give Butler "seven days' written notice" before termination. Otherwise, plaintiffs could "at any time terminate the Contract for [their own] convenience and without cause." In such a case, Butler would "be entitled to payment for Work executed" as well as "reasonable overhead and profit on the Work not executed."

¶ 15    On cross-examination, Petrzelka admitted that he did not consult with the architect before terminating the contract. He stated that neither the text message nor the subsequent letter from Shaker's father included a seven-day notice. He also admitted that the last payment he made to Butler was on April 10 and that, at that time, he still had hopes of Butler completing the project. Petrzelka testified that he made the April 10 payment "to move the job along." He also testified that, although he had hoped to have Butler finish the renovation even after the deadline, he did not intend to waive any of the provisions of the contract.

¶ 16    Christopher Beemer, the architect who prepared the plans for the renovation, testified for plaintiffs. He stated that changes to the plans required written change orders signed by both parties and that he did not see any change orders during the renovation. Although he did not recall ever visiting the house during the renovation, Beemer opined that the renovations were eight weeks behind schedule at the time plaintiffs terminated Butler.

¶ 17    Beemer also testified that his original architectural plans lacked the support beam that caused the house to fail the February 2 inspection. He stated that, although the missing beam was

his own "omission", it was incumbent upon Butler as general contractor to bring that omission to his attention. He testified that work may sometimes continue after a failed inspection.

¶ 18    The plaintiffs also called a plumber who had worked with Butler on earlier projects, as well as another homeowner who had hired Butler to perform renovations but fired him before any work was done. Their testimony was elicited to establish Butler's "routine practice" of not paying subcontractors or timely completing projects. See Ill. R. Evid. 406 (eff. Jan. 1, 2011).[3]

¶ 19    Finally, plaintiffs introduced the evidence deposition of Salvador Gutierrez, a bricklayer. Gutierrez testified Butler paid him approximately $3000 to do some of the brick work on plaintiffs' house. He also testified that Butler asked him to produce an invoice for $7000 for that same work. Butler's counsel objected to the admission of the evidence deposition on the grounds that Gutierrez was not personally subpoenaed and plaintiffs did not establish that he was unavailable to appear in court. The court noted the objection but did not rule upon it.

¶ 20    Butler testified that after the failed inspection, he had to install a support beam that was not part of the original plans. That extra work cost $2500. After the failed inspection, he was able to do some additional work, but the renovations could not proceed "at a hundred percent capacity" for nearly two weeks. He also testified that in late February 2017, Shaker requested additional work modifications to the foyer of the house, including the removal of a wall and the installation of a tile floor. That work also was not part of the original plans and cost $4500. Finally, Butler testified that the plans called for several windows to be bricked in. However, the contract did not include costs for masonry. He testified that the total cost of bricking in the windows was $7000.

---

[3] Because Butler does not contest the admission of this evidence, we need not determine whether the evidence was properly admitted under Rule 406 to establish a "routine practice" or improperly admitted as evidence of prior bad acts. *See Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 88.

¶ 21 On cross-examination, Butler admitted that he did not inform plaintiffs how much the extra work on the beam, foyer, or windows would cost or how long he expected it to take. He also admitted that he did not produce any written change orders until after he had been terminated. He testified that the $7000 invoice from Gutierrez reflected the $3000 that he paid Gutierrez and the cost of his own labor and supplies. Butler testified that, had he not been terminated, he could have finished the project in two weeks.

¶ 22 The parties submitted posttrial briefs and the court entered a written judgment in plaintiffs' favor. The court ruled against plaintiffs on their proposed tort theories, but found that Butler had materially breached the contract by failing to meet the substantial completion date. The court specifically found that plaintiffs "did not waive the time is of the essence clause." The court awarded plaintiffs a total of $39,151.17 in damages. The award was itemized as "$33,651.17 for the unfinished work and $10,000.00 for the unfinished basement," with a $4500 reduction for the additional masonry work and the installation of the support beam.

¶ 23 Butler filed a posttrial motion arguing that the court erred in finding that plaintiffs' actions, including making a payment after the March 31 substantial completion date, did not constitute a waiver of the "time is of the essence" clause. The motion also argued that the court erred in calculating the damages by not considering the cost of the additional work on the foyer. The court denied the motion but reduced the judgment to $22,351.17. That figure represented the original judgment amount less $16,800, the unpaid balance of the contract price. In denying the motion, the court found that plaintiffs' final payment to Butler did not constitute a waiver of the "time is of the essence" clause, but "was a good faith effort to perform their obligation under the contract and mitigate damages." This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    "[W]hether or not a material breach of contract has been committed is a question of fact and, consequently, the lower court's determination will not be disturbed unless it is against the manifest weight of the evidence." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006). This deferential standard is employed "because the trial judge, as a trier of fact, is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive." *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23.

¶ 26    Butler first argues that he did not breach the contract because the failed inspection and additional work delayed the project. The court heard competing evidence about how the failed inspection affected the renovations and about how far behind schedule the work was by the substantial completion date. The trial court is in the best position to resolve disputed facts based on, among other things, the credibility of the witnesses. *Id.* Based on this record, we will not disturb the circuit court's factual determination that Butler's failure to meet the deadline was a material breach.

¶ 27    Butler also argues that the court's subsequent $16,800 reduction of the judgment is inconsistent with a finding that he breached the contract. He contends that the reduction was a "*de facto* finding" that plaintiffs, not he, breached the contract. That, he claims, is the only plausible explanation for the $16,800 reduction. We disagree.

¶ 28    The circuit court's order does not explain why it subtracted $16,800 from the total judgment. However, the contract itself makes that decision clear: "If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, such excess shall be paid to the Contractor. *If such costs exceed the unpaid balance, the Contractor shall pay the difference to the Owner*. (Emphasis added.)" The proper measure of damages, therefore, is the difference between the cost to finish the renovations and the remaining balance on the contract. This is consistent with

established Illinois law. See *Ross v. Danter Associates, Inc.*, 102 Ill. App. 2d 354, 370 (1968) (the proper measure of damages where a contractor has partially performed is the difference between the contract price and the cost to complete the work); *Castricone v. Michaud*, 223 Ill. App. 3d 138, 141 (1991) ("under the general rule the total cost of completing the home must be netted against the original contract price.").

¶ 29    As a result of Butler's breach, plaintiffs saved $16,800 that they would otherwise have had to pay him. The court found that the additional costs for plaintiffs to complete the renovations exceeded this unpaid balance, so it calculated the damages by subtracting the unpaid balance from plaintiffs' additional costs. Had the court *not* subtracted the $16,800 balance from the judgment, the plaintiffs would have received a windfall, functionally having the remaining work done for free. The court's decision to reduce the judgment by $16,800 was entirely consistent with the finding that Butler breached the contract.

¶ 30    Butler's next argument is that plaintiffs waived the "time is of the essence" provision of the contract. Specifically, he argues that plaintiffs impliedly waived it through Petrzelka's conduct. Petrzelka testified that even after the substantial completion date, he made a payment to Butler in an attempt "to move the job along."

¶ 31    "The extent to which a 'time is of the essence' provision in a contract will be strictly enforced depends upon the intention of the parties as determined primarily by the language used viewed under the circumstances surrounding the agreement as they reflect on the meaning of the words." *Hart v. Lyons*, 106 Ill. App. 3d 803, 805 (1982). Consequently, some courts have found such provisions to be waived when the parties act in ways that are inconsistent with enforcement of the provision. *Id.* (listing such cases). We will reverse a court's determination on this issue only if it is against the manifest weight of the evidence. *Id.*

¶ 32    Butler makes much of Petrzelka's testimony that, as late as April 14, Petrzelka communicated to Butler that he had hoped for Butler to complete the renovations. He argues that Petrzelka's "amicable communications," combined with plaintiffs' April 10 payment, amounted to an implied waiver of the "time is of the essence" provision. Plaintiffs point out that Petrzelka testified that he never intended to waive the provision. Also, well before the substantial completion date, plaintiffs had expressed to Butler their concerns about the renovations running behind schedule. He also testified that his communications with Butler were merely an effort to get the renovations finished in the most expeditious way possible. The circuit court heard evidence and argument about these competing interpretations of the facts and concluded that plaintiffs did not waive the "time is of the essence" provision.[4] That decision was not against the manifest weight of the evidence. See *1472 North Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13 (decisions are against the manifest weight of the evidence only if "unreasonable, arbitrary, or not based on evidence.").

¶ 33    Butler also contends that the circuit court found that plaintiffs terminated him for their own convenience, rather than because of his breach. Alternatively, he argues that plaintiffs themselves breached the contract by terminating him without consulting the architect and providing proper notice. Neither of these arguments is persuasive.

---

[4] Butler takes issue with the court's written finding that Petrzelka's conduct was "a good faith effort to perform their obligation under the contact and mitigate damages." The contract included a payment schedule, so the court's conclusion that the payment was "a good faith effort to perform their obligation" is well founded. The language "mitigate damages," however, evokes a legal concept that is not obviously applicable here. As discussed above, the proper measure of damages was plaintiffs' costs to complete the renovations minus the remaining contract balance. The court's conclusion appears to be that if, after Butler breached the contract, Petrzelka had succeeded in convincing Butler to quickly finish the job at the contract price, some or all of the damages would have been avoided. Hence, Petrzelka's communications with Butler after the substantial completion date were, in a way, an attempt to "mitigate damages."

¶ 34    Butler points out that the circuit court's written judgment does not include a specific finding that he was terminated "for cause." However, the court found that Butler's failure to finish the work in a timely manner was a material breach of contract. Moreover, both Petrzelka's text message and the letter from Shaker's father specifically identified Butler's lack of progress as the reason for the termination. The evidence clearly supports the conclusion that the termination was "for cause."

¶ 35    Additionally, the circuit court found that plaintiffs' failure to consult with the architect and to give seven days' notice before termination was not a material breach. Whether a breach is material is a factual determination that includes considerations such as "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party." *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47 (2005) (quoting *Sahadi v. Continental Illinois National Bank & Trust Co. of Chicago*, 706 F.2d 193, 196 (7th Cir. 1983)).

¶ 36    Although Butler testified that he could have completed the remaining work in two weeks, Beemer opined that the renovations were eight weeks behind schedule. Petrzelka testified that plaintiffs were finally able to move into the house on June 23, 2017, nearly three months after the substantial completion date. This evidence reasonably supports the circuit court's conclusion that plaintiffs' failure to consult with Beemer or provide seven days' notice was not a material breach. Butler did not suffer any prejudice because the evidence shows that Butler could not have cured his own breach in seven days.

¶ 37    Butler's final argument is that the damages award was against the manifest weight of the evidence. "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson*

11

*v. Chapman*, 175 Ill. 2d 98, 113 (1997). "Where an award of damages is made after a bench trial, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence." *Feinerman*, 2013 IL App (1st) 121191, ¶ 13. A trial court's award of damages is against the manifest weight of the evidence where the opposite conclusion is clear, or where the court's decision is "unreasonable, arbitrary, or not based on evidence." *Id.* "An award of damages is not against the manifest weight or manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages." *Id.*

¶ 38 In an action for breach of contract, "the plaintiff bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994). The damages calculation need not be absolutely certain, but the basis for computing damages must be reasonable. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75 (2006).

¶ 39 The circuit court characterized its judgment as consisting of two components: the cost to complete the renovations and the contract value of the unfinished the basement. The court awarded "$33,651.17 for the unfinished work and $10,000.00 for the unfinished basement." Butler contends that no evidence supports either component.

¶ 40 In support of the award for the unfinished work, Petrzelka testified that he spent "just over $33,000" on subcontractors and materials to finish the renovations. He testified that he had hired painters, electricians, and plumbers to perform the work that he could not do himself. He also testified about what tasks remained unfinished at the time of the breach. Among other things, he listed painting, installing light fixtures and electrical outlets, connecting appliances and air

conditioning units, connecting the water and installing plumbing fixtures. This testimony provided a reasonable basis for the court to award damages.

¶ 41   Even so, Butler argues that the specific amount of $33,651.17 was not supported by any evidence. That figure came directly from the complaint and was later recited in plaintiffs' posttrial brief. However, that number did not appear in any evidence or testimony, and Butler denied the relevant allegation of the complaint.

¶ 42   We find, however, that the $33,651.17 award is substantially supported by Petrzelka's testimony that he spent "just over $33,000" to complete the renovations and his testimony about what tasks remained unfinished. The fact that the exact figure was not directly mentioned in any testimony does not invalidate the award. See *Hamilton v. American Gage & Machine Corp.*, 35 Ill. App. 3d 845, 851 (1976) ("We find no problem in the contention raised by defendants that there was no mention in the testimony of the exact amount granted by the trial judge."). We therefore affirm the $33,651.17 portion of the judgment.

¶ 43   Butler also contends that the evidence did not support the $10,000 award for the uncompleted basement. The evidence related to the basement was the contract—with its $20,000 provision for "Basement Finish"—and Prezelka's testimony that the basement project was not completed. Aside from an oblique reference to the fact that a new basement floor was poured, plaintiffs offered no testimony about what work was anticipated or performed as part of the "Basement Finish." The court, without an adequate evidentiary basis upon which to calculate damages, simply halved plaintiffs' $20,000 request.

¶ 44   "Where the court compromises the damages and does not base them on evidence, it is error." *Franzen v. Dunbar Builders Corp.*, 132 Ill. App. 2d 701, 710 (1971). In *Franzen*, condominium owners alleged, among other things, that a contractor installed sliding doors that did

not conform to the building plans. *Id.* The owners presented evidence "that the difference in price between the brand of door referred to in the plans and the brand actually installed amounted to $3,100.00." *Id.* The owners also presented testimony "that they were required to replace rollers on the doors and that they had experienced difficulties, including drafts, condensation and icing." *Id.* The trial court awarded the owners exactly half the requested damages for the doors. *Id.* This court reversed, holding that it was error for the trial court to craft a compromise award that was not supported by the evidence. *Id.*

¶ 45    As in *Franzen*, the circuit court in this case arrived at its damages award by simply halving the requested amount. Plaintiffs sought $20,000 for the unfinished basement but presented no evidence about how much basement work Butler had performed—or left unperformed. Consequently, the court's $10,000 award was not adequately supported by the evidence. See *Id.* at 712 (reversing the portion of the judgment related to the improper compromise amount while affirming the remainder of the judgment). See, also, *First National Bank of Des Plaines v. Shape Magnetronics, Inc.*, 135 Ill. App. 3d 288, 293 (1985). (directed verdict on damages was appropriate where "plaintiffs failed to specifically identify the cost of repairing those damages alleged to have been caused by defendant" and did not "link[] those costs to specific damages alleged to have been caused by defendant.").

¶ 46                                    III. CONCLUSION

¶ 47    We affirm the circuit court's finding that Butler materially breached the contract. We reduce the judgment by $10,000, that being the portion of the judgment pertaining to the basement. We affirm the remainder of the judgment in the final amount of $12,351.17.

¶ 48    Affirmed as modified.

14