**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240360-U

Order filed March 27, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| NORCOR BOLINGBROOK ASSOCIATES, LLC, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-24-0360 |
| v. | ) ) | Circuit No. 21-L-682 |
| | ) ) | Honorable |
| AMERICASH LOANS, LLC, | ) ) | John C. Anderson, Judge, Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE BERTANI delivered the judgment of the court.
Presiding Justice Brennan and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court's finding that defendant demonstrated commercial impracticability sufficient to justify early termination of its lease was not against the manifest weight of the evidence.

¶ 2    Plaintiff, Norcor Bolingbrook Associates, LLC (Norcor), filed suit against defendant, AmeriCash Loans, LLC (AmeriCash), for breaching the parties' lease. After a bench trial, the Will County circuit court found in favor of AmeriCash, finding that it produced sufficient evidence to prove that the early termination clause of the lease was triggered by commercial impracticability.

Norcor appeals, arguing that AmeriCash did not prove that it made reasonable efforts to conduct business prior to claiming commercial impracticability. We affirm.

¶ 3                                           I. BACKGROUND

¶ 4        AmeriCash is a payday loan company formerly engaged in offering retail consumer loans at the premises owned by Norcor. In December 1997 AmeriCash signed a lease with Norcor for space in Bolingbrook, Illinois, from which AmeriCash intended to operate its business. The business relationship between AmeriCash and Norcor continued for several years, during which time the lease received several amendments regarding rent amounts and term extensions. Other than those term extensions and rent adjustments, no other substantive amendments were implemented.

¶ 5        Of relevance to this appeal, the lease provided the following language in Section 41 regarding early termination:

> "Termination by Tenant: If federal or state legislation changes such that it becomes illegal, impossible or commercially impracticable to conduct the business of Tenant at the Premises, Tenant shall have the option to terminate this Lease upon three (3) months' written notice, and neither party shall have any liability either for damages or otherwise to the other by reason of such termination. Tenant agrees to forfeit its security deposit in the event of such termination."

The lease identified "the business of the Tenant" as a retail consumer loan company that provided short-term payday loans and included that AmeriCash intended to operate this business on the premises.

¶ 6        On January 19, 2021, AmeriCash sent Norcor notice of early termination pursuant to section 41 of the lease. AmeriCash cited to the soon-to-be-enacted Illinois Predatory Loan

Prevention Act (PLPA) (815 ILCS 123/15-1-1 *et seq.*(West 2020)) as legislation that would make its business "illegal, impossible or commercially impracticable." Specifically, the PLPA provided that: "[n]otwithstanding any other provision of law, for loans made or renewed on and after the effective date of this Act, a lender shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a loan." *Id.* § 15-5-5.

¶ 7 On February 3, 2021, Norcor sent AmeriCash a notice that it was in arrears in its rent payments and that an action for forcible entry and detainer would commence if it did not become current. The PLPA went into effect on March 23, 2021. AmeriCash sent another notice of termination on April 6, 2021, citing the same lease provision and the PLPA as its reason for early termination.

¶ 8 Norcor filed suit against AmeriCash on September 2, 2021, alleging that AmeriCash breached the terms of their lease by wrongfully terminating the lease and refusing to pay rent. It further asserted that AmeriCash owed $96,245.68 in rent for the remainder of the lease. AmeriCash responded, raising section 41 of the lease regarding early termination due to commercial impracticability as an affirmative defense. It also alleged Norcor had a duty to mitigate damages and had failed to do so.

¶ 9 Norcor filed a motion for summary judgment, arguing that section 41 of the lease and the terms of the PLPA did not excuse AmeriCash's obligation to pay the rent due. The court partially granted Norcor's motion regarding AmeriCash's defenses of illegality and Norcor's failure to mitigate damages. However, it denied Norcor's motion as it related to the issue of whether commercial impracticability permitted AmeriCash to terminate the lease early.

¶ 10 The matter proceeded to bench trial on January 16, 2024. AmeriCash called Bonnie Schoenberg to testify on its behalf. Schoenberg testified regarding AmeriCash's determination that

3

conducting business under the PLPA would be commercially impracticable. She testified that she was an AmeriCash board member since the business's inception and currently acted as its general counsel. She stated that it was necessary that AmeriCash operate at rates exceeding 300% APR because the loans the business provided were small and unsecured and it experienced a default rate of 20%. AmeriCash needed a high interest rate to make a profit due to these factors. Its current interest rate was around 390%. The PLPA placed a cap on such loans at 36%, which was significantly lower than the rates AmeriCash routinely used.

¶ 11    Schoenberg further testified the board met in January 2021 when AmeriCash first learned that the PLPA would soon be enacted to consider the impact of the interest cap on its business. It concluded that it would not be able to make a profit if it continued its business under this restriction. Schoenberg testified that "[AmeriCash] ran the numbers and there was no possible way to make even a slight profit at 36 percent. In fact, it would have been huge losses." She testified that the board specifically concluded the company could not earn a profit at the Bolingbrook location given the limitations imposed by the PLPA.

¶ 12    The circuit court found in AmeriCash's favor, ruling that it would be commercially impracticable for the business to continue under the PLPA and that its termination of the lease was proper under section 41 of the lease. The court referenced in its written order the definition of commercial impracticability provided by the Restatement (Second) of Contracts, § 261 (1981) to support its finding. It also stated it based its findings on Schoenberg's testimony, specifically noting that AmeriCash loans currently exceeded 300% due to high default rates, that it could not operate profitably with interest rates below 36%, and that all AmeriCash's locations in Illinois closed once the PLPA went into effect. It found Schoenberg credible and concluded AmeriCash sufficiently demonstrated that the PLPA rendered its business impracticable.

4

¶ 13    The court denied Norcor's motion to reconsider, and this appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    Norcor argues that the circuit court erred in finding in AmeriCash's favor regarding commercial impracticability. It contends AmeriCash was required to conduct business after the PLPA's enactment to properly demonstrate commercial impracticability before it could exercise its early termination rights under section 41 of the lease. Norcor further claims that without attempting to operate its business under the new law and thereafter providing the results of its success or failure, AmeriCash did not provide sufficient evidence that it would be commercially impracticable to continue operations. AmeriCash counters that Schoenberg's testimony that the board convened and reviewed its options before determining that there was no way to make a profit under the PLPA is sufficient proof of commercial impracticability, and that the court did not err in reaching that conclusion.

¶ 16    When reviewing a decision following a bench trial, we may not disturb the circuit court's judgment unless it is against the manifest weight of the evidence. *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23. A judgment is against the manifest weight of the evidence if the court's findings are unreasonable, arbitrary, or not based on the evidence. *Id.* This deferential standard of review is appropriate "because the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Wade v. Steward Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 59. However, we review *de novo* the circuit court's decision regarding contract interpretation. *Marx Transport, Inc. v. Air Express International Corp.*, 379 Ill. App. 3d 849, 854 (2008) Thus, to the extent this appeal requires us to construe the terms of the lease, our review is *de novo*. *Id.*

¶ 17    Starting with the terms of the lease, the language in section 41 is clear. If legislation prohibits AmeriCash's business or makes it "commercially impracticable," AmeriCash may terminate its lease early but must first send notice to Norcor of its intent to do so. The interpretation of this section hinges on what "commercial impracticability" means under the circumstances and how AmeriCash must prove it in order to exercise the lease's early termination clause.

¶ 18    The rationale for raising commercial impracticability as a defense is that the change in circumstance has rendered further performance under a contract "so vitally different from what was anticipated that the contract cannot reasonably be thought to govern." *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 991 (5th Cir.1976). Section 261 of the Restatement (Second) of Contracts provides:

> "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." Restatement (Second) of Contracts, § 261 (1981).

¶ 19    The court in *Northern Illinois Gas Co. v. Energy Cooperative, Inc.*, discusses the Restatement's definition, finding that a party wishing to use impracticability as a defense must first use "reasonable efforts to surmount obstacles to performance and performance is impracticable only if it is so in spite of such efforts." 122 Ill. App. 3d 940, 956 (1984); Restatement (Second) of Contracts, § 261 cmt. d. Moreover, a party seeking to excuse certain obligations under this theory must demonstrate that it can operate "only at a loss," and that the loss would be so severe and unreasonable that continuing performance "would result in grave injustice." *Northern Illinois Gas Co.*, 122 Ill. App. 3d at 956. Impracticability may also be described as "extreme and

6

unreasonable" difficulty or loss. Restatement (Second) of Contracts, § 261 cmt. d. However, "[a] mere change in the degree of difficulty or expense * * * unless well beyond the normal range, does not amount to impracticability." *Id.* Other jurisdictions also indicate that strict impossibility is not a requirement for using impracticability as a defense. See, *e.g.*, *International Minerals & Chemical Corp. v. Llano, Inc.*, 770 F.2d 879, 886-87 (10th Cir. 1985) ("[S]trict impossibility is no longer required."); *Gulf Oil Corp. v. Federal Power Comm'n*, 563 F.2d 588, 599 (3d Cir. 1977) ("The crucial question in applying that doctrine to any given situation is whether the cost of performance has in fact become so excessive and unreasonable that the failure to excuse performance would result in grave injustice."), *cert. denied* 434 U.S. 1062 (1978); *Mineral Park Land Co. v. Howard*, 156 P. 458, 460 (Cal. 1916) ("[A] thing is impracticable when it can only be done at an excessive and unreasonable cost.").

¶ 20          Before turning to the circuit court's decision, we must first note the similarities between this matter and *Norcor Cicero Associates, LLC v. Title Lenders, Inc.*, 2024 IL App (1st) 232161-U. *Norcor Cicero* found that a different payday lender could not terminate its contract because the PLPA did not prohibit it from continuing with its business, even if it did affect its profits. *Id.* ¶ 21. However, *Norcor Cicero* does not address commercial impracticability, as that condition was not included in the lease's early termination clause. *Id.* ¶¶ 4, 18. Thus, the court in *Norcor Cicero* did not address whether the PLPA created a commercially impracticable situation for the payday lender; it only discussed whether the PLPA made operating the business illegal or otherwise prohibited the lender's business. *Id.* ¶ 21. That is not the issue before this court—the circuit court here specifically ruled that AmeriCash was permitted to terminate the lease early for commercial impracticability, not illegality. *Norcor Cicero* is therefore an unsuitable comparison for our analysis.

7

¶ 21        Norcor argues on appeal that AmeriCash must continue conducting business under the PLPA before it can claim severe loss and commercial impracticability. Norcor points to *Northern Illinois Gas* to support this position and argues that it requires AmeriCash to continue its business and experience severe loss because a party must make "reasonable efforts" to work within in the obstacles created. See *Northern Illinois Gas Co*., 122 Ill. App. 3d at 955-56. However, "reasonable efforts" does not necessarily require continuing operations before determining impracticability. See, *e.g.*, *Stock & Grove, Inc. v. United States*, 493 F.2d 629, 643 (Ct. Cl. 1974) (it is not necessary to show that performance is literally impossible—difficulty, cost, and time factors can make performance "commercially impossible"); *Sherwin Alumina L.P. v. AluChem, Inc.*, 512 F. Supp. 2d 957, 973 (S.D. Texas 2007); *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours and Co.*, 118 S.W.3d 60, 70 (Texas Ct. of App. 2003) (a party must explain why certain actions were not reasonable rather than performing an unreasonable act to show impracticability). Norcor's position that AmeriCash must attempt to conduct business under the new law before it can argue commercial impracticability creates an additional requirement that is not present in the lease, nor is it required under the Restatement (Second) of Contracts or accompanying caselaw. See *Northern Illinois Gas Co.*, 122 Ill. App. 3d at 955-56; Restatement (Second) of Contracts § 261.

¶ 22        Requiring AmeriCash to continue a business that would not achieve a profit would not be a "reasonable" prerequisite to early termination of the lease. The reasonable effort to surmount the obstacle imposed by the PLPA was satisfied by the AmeriCash board's meeting where it discussed the potential numbers under the new interest rate cap and determined that no profit could be obtained by staying in business. It would be unreasonable to require AmeriCash to actually operate at a total loss before terminating its lease early. AmeriCash must only demonstrate that it assessed the situation before it and explain why it was not reasonable to conduct business under these new

8

conditions. See *Tractebel Energy Marketing, Inc.*, 118 S.W.3d at 70 (party must explain why possible action to surmount new obstacle was unreasonable). AmeriCash demonstrated that it made reasonable efforts to overcome the intervening event of the PLPA's enactment through Schoenberg's testimony that the board held a meeting and evaluated the situation before determining that it would not be profitable to continue under the PLPA-required interest rate cap. This testimony was unrefuted, found to be credible by the court, and is sufficient proof of reasonable efforts to overcome the obstacle prior to determining commercial impracticability.

¶ 23    After reviewing the meaning of commercial impracticability and the evidence presented at trial, we find that the circuit court's finding in favor of AmeriCash was not against the manifest weight of the evidence. Norcor's position adds requirements to proof of commercial impracticability that are not supported by precedent. The court's ruling was sound and grounded in the evidence presented.

¶ 24                                III. CONCLUSION

¶ 25    The judgment of the circuit court of Will County is affirmed.

¶ 26    Affirmed.