# Illinois Official Reports

## Appellate Court

---

### *Vician v. Vician*, 2016 IL App (2d) 160022

---

| | |
|---|---|
| Appellate Court Caption | GARY VICIAN and GALE VICIAN, Assignees of Edward Vician and Dolores Vician, Plaintiffs-Appellees, v. GREGORY L. VICIAN and MICHELLE VICIAN, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-16-0022 |
| Filed<br>Rehearing denied | September 27, 2016<br>October 28, 2016 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-LA-127; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Carponelli Law Office, LLC, of Hoffman Estates (Ross S. Carponelli, of counsel), for appellants.<br><br>Ward Brown, of Michling Plaza & Associates, of Woodstock, and Glenn S. Vician, *pro se*, of Merrillville, for appellees. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, Gary Vician and Gale Vician, assignees of Dolores Vician and Edward Vician on a promissory note, filed a complaint against defendants, Gregory L. Vician and Michelle Vician. After a bench trial, the trial court awarded plaintiffs $257,586.12 on the note and $51,014.78 in attorney fees. Defendants appeal, arguing that (1) the trial court abused its discretion when it arbitrarily disregarded evidence in favor of defendants, (2) the trial court erred by denying their motion for a directed finding, and (3) the trial court erred by awarding attorney fees. For the following reasons, we affirm.

¶ 2                          I. BACKGROUND
¶ 3    Dolores and Edward are the parents of Gary, Gale, and Gregory, who is married to Michelle.

¶ 4                          A. Complaint
¶ 5    On April 30, 2014, plaintiffs filed a "Complaint on Promissory Note" against defendants alleging the following. Dolores and Edward loaned defendants $357,586.12, and in consideration for the loan, defendants signed a promissory note executed on October 1, 2009, and delivered, for value received. Defendants "agreed to pay such Promissory Note under the terms set out therein." On August 1, 2012, Dolores and Edward assigned the promissory note to plaintiffs, "for consideration." Defendants defaulted in payments owed on the promissory note and refused to cure the default after a demand was made. The default existed for more than one year. Plaintiffs sought principal, interest, attorney fees, and costs.

¶ 6    The promissory note, attached to the complaint, provides:

> "1. BORROWER'S PROMISE TO PAY
>
> In return for a loan that I have received, I promise to pay U.S. $357,586.12 (this amount is called 'Principal'), plus interest, to the order of the Lender. The Lender is [*sic*] Edward S. Vician and Dolores M. Vician. I will make all payments under this Note in the form of cash, check or money order. $100,000 of Principal Balance is waived if Note is PAID AS AGREED.
>
> I understand that the Lender may transfer this Note."

The promissory note contains two signature lines. Defendants' names appear under the signature lines, followed by the word "Borrower." Signatures appear above the signature lines.

¶ 7                          B. Bench Trial
¶ 8    A bench trial was held on November 30, 2015. Dolores testified as follows. In 1996 Dolores and Edward loaned Gregory $125,000, as evidenced by a 1996 mortgage signed by Gregory and notarized. Dolores and Edward delivered the $125,000 to Gregory. In addition, Dolores and Edward made two loans to Gregory and Michelle: a loan for an undetermined amount and, in November 2006, a loan for $130,000.

¶ 9    Dolores further testified that on July 27, 2009, she and Edward loaned Gregory and Michelle $363,406.75, as evidenced by a mortgage signed by Gregory and Michelle and notarized by Jan Risch. On October 1, 2009, a promissory note was signed by defendants in the

presence of Dolores. The promissory note was for a principal balance of $357,586.12, reduced due to payments that Gregory had made on the July 27, 2009, loan and a lower interest rate. Dolores created and kept a loan amortization schedule, and on this schedule and on a separate ledger she recorded and gave credit for all payments made by Gregory and Michelle. To make payments on the loan, Gregory or Michelle deposited money into a Harris Bank account titled in Gregory's and Gale's names. The Harris Bank account statements were mailed to the home of Dolores and Edward. Dolores used the monthly statements to keep track of Gregory and Michelle's payments. These statements contain account activity from May 23, 2008, through August 22, 2011, and were admitted into evidence as plaintiffs' exhibit No. 15.

¶ 10    Dolores also testified as follows. The Harris Bank statements indicated that Gregory withdrew $16,908.71 from the account on August 3, 2011. From September 2011 through March 2012, Gregory made payments on the loan by mailing checks to his parents' home. Dolores deposited the checks and recorded the payments on her ledger and loan amortization schedule. After March 2012, neither Gregory nor Michelle made any payments on the loan. The $16,908.71 that was withdrawn was never replaced. Because of Gregory's withdrawal, the principal amount owed on the promissory note was the original amount, $357,586.12. Dolores was willing to waive her right to interest on the promissory note from October 2009 to the date of judgment, but she was not willing to waive her right to postjudgment interest. Dolores testified that she and Edward assigned the promissory note to Gary and Gale.

¶ 11    Gale testified as follows. Gale recognized Gregory's signature on the promissory note. Dolores and Edward assigned the promissory note to Gale and Gary for $10. Gale identified the written assignment and recognized her signature on the document. The assignment indicated that it was executed on August 1, 2012. Gale testified that, after that date, defendants made no payments to her.

¶ 12    Risch testified that she witnessed defendants sign the July 2009 mortgage.

¶ 13    Plaintiffs' attorney, Ward Brown, testified regarding his fees. The trial court admitted his affidavit and attached time ledger.

¶ 14    At the conclusion of plaintiffs' case-in-chief, defendants moved for a directed finding.[1] Defendants argued that plaintiffs failed to establish a *prima facie* case because they failed to establish, *inter alia*, that defendants received consideration for the promissory note. Defendants also argued that plaintiffs failed to prove that the signatures on the promissory note were valid. Defendants concluded that "the Court cannot conclude that an enforceable promissory note exists."

¶ 15    The trial court denied defendants' motion for a directed finding,[2] explaining that "the Plaintiffs have adequately established a *prima facie* case." The trial court stated that Dolores's

---

[1]We note that defendants stated in the trial court that they were moving for a "directed verdict." However, a party moves for a directed verdict in a jury trial (735 ILCS 5/2-1202 (West 2014)) and a directed finding in a bench trial (735 ILCS 5/2-1110 (West 2014)). Although it would have been more appropriate for defendants to state that they were moving for a directed finding, as a bench trial was held in this case, the content of a motion, and not its title or label, determines its character. See *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 48 n.1 (2010).

[2]Although the trial court adopted defendants' term, "directed verdict," it applied the two-step process applicable to a motion for a directed finding, pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2014)).

testimony was sufficient to establish that defendants received consideration. The trial court also stated that Dolores's testimony that she personally witnessed Gregory sign the promissory note was sufficient to meet "the burden of proof."

¶ 16    Warren Spencer, an expert forensic handwriting and document examiner, testified on behalf of defendants as follows. Spencer compared Gregory's and Michelle's signatures on other documents to the signatures on the promissory note. Spencer opined that the signatures on the promissory note were not those of Gregory and Michelle.

¶ 17    Michelle testified as follows. Michelle never received a loan from Dolores or Edward. Michelle never signed any document stating that she would pay money to Dolores or Edward. Michelle did not sign the promissory note. Michelle testified that the signature on the July 2009 mortgage was hers but that she did not sign the mortgage.

¶ 18    Gregory testified as follows. Gregory did "not believe [he] signed" the July 2009 mortgage because there were no witnesses. Gregory testified that, although the signature looked like his, he did not sign the mortgage. Gregory did not receive $363,406 as indicated on the mortgage. Gregory testified that he did not sign the promissory note. Although "they had given [him] money," he never received $357,000. Gregory received "disbursements, and then they tried to turn around and make up a sum." Gregory did not bring any cancelled checks with him to court. When asked how much money he had paid back over time, Gregory replied:

> "I could only go back seven years since 2012. So, it's 2005, and by that account, that Harris Bank account, I paid over $250,000 into that account. There was still nine years missing that I couldn't get to because the bank would only go back seven years."

Gregory testified that "they're missing" payments that he had made from 1996 through 2005. Gregory testified that he continued to make payments even after plaintiffs filed their complaint. Gregory testified that in August 2011 he withdrew $16,900 from the Harris Bank account.

¶ 19    During cross-examination, plaintiffs' counsel asked Gregory, "How many records did you bring to court to show the payments you made?" Gregory replied:

> "You have the Harris Bank statements which is where I made—according to my mom's testimony, where I made my payments into, and those payments, I went back—[t]hose have seven years of statements there, and those show over $250,000 of just seven years of statements, not including the later payments that I continued paying, and not including nine years prior to, from '96 to 2005."

¶ 20    After considering the evidence, the trial court found in favor of plaintiffs and against defendants and entered judgment in the amount of $308,627.90. In rendering its judgment, the trial court found "that the witnesses for the plaintiff[s] were credible and consistent in their testimony." The trial court made the following findings. Dolores's testimony established that she entered into an agreement with defendants to lend them money. The agreement was memorialized by the promissory note, the mortgage, communications between the parties, and payments made by Gregory. Dolores testified that she saw defendants sign the promissory note and that she delivered the funds pursuant to "the agreement." Dolores's testimony was supported by the testimony of Risch, an independent witness.

¶ 21    The trial court concluded as follows:

"[T]he court finds that there was an agreement and the delivery of $357,586.12, as memorialized by the note. The defendants failed to make payments on the note and, therefore, were in default.

Again, the defendants claimed that—that they made payments and reduced that amount but didn't produce any evidence of it.

The note was subsequently assigned for valuable consideration to the current plaintiffs in this case.

Further, Dolores Vician made a gift of $100,000 to the defendants, while she claimed [that] there were some conditions precedent to that gift. Those conditions were absent from the letter memorializing this gift.

As such, the court determines that the hundred—one-hundred-thousand was intended as a contemporary—as a gift at the time and not one to be realized at a future date and reduces the debt accordingly.

This leaves a total of $257,586.12.

The note under which the suit was brought provided for attorney's fees—and should suit on the new note be necessary. And as a result, the court awards plaintiffs $51,014.78 in fees, as that was supported by the testimony of Mr. Brown.

For a total of $308,627.90."

Defendants filed a timely notice of appeal.

## II. ANALYSIS

As a preliminary matter, we note defendants' counsel's blatant violations of supreme court rules in handling this appeal. Most particularly, defendants' statement of facts violates Illinois Supreme Court Rule 341(h)(6) (eff. Jan. 1, 2016). Rule 341(h)(6) requires a statement of facts that contains the facts "necessary to an understanding of the case, stated accurately and fairly without argument or comment." *Id.* Failure to comply with the rules regarding appellate briefs is not an inconsequential matter. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005). Defendants' "statement of facts" consists of less than two pages of argument and fails to acquaint this court with the procedural history of the case, the issues involved, or the evidence provided to the trial court. Accordingly, we express our displeasure with defendants' counsel, Ross S. Carponelli, and admonish him for failing to comply with Rule 341. Further, we strike defendants' statement of facts. See *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9. Although defendants failed to provide this court with a sufficient statement of facts, plaintiffs provided a summary of the relevant evidence in their response brief, and the issues raised by the parties are simple. Thus, our review is not hindered.

### A. Trial Court's Findings

Defendants first argue that "there should be a reduction in the judgment award by an amount of $250,626." Specifically, defendants contend that the trial court disregarded Gregory's testimony that he "paid over $250,000" on the promissory note and disregarded documentary evidence, contained in plaintiffs' exhibit No. 16, showing payments of $100,626.

We note that defendants misstate the standard of review. Defendants contend that the trial court abused its discretion when it arbitrarily disregarded evidence in favor of defendants.

However, substantively, defendants challenge the trial court's findings of fact and credibility determinations.

¶ 27 In a bench trial, as here, the trial judge is the trier of fact. *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23. The trial court is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive. *Id.* Therefore, when we are faced with a challenge to the trial court's judgment following a bench trial, we will reverse that judgment only if it is against the manifest weight of the evidence. See *id.* A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the judgment is arbitrary, unreasonable, or not based on the evidence. *Id.* In other words, if the record contains evidence to support the trial court's judgment, that judgment should be affirmed. *In re Estate of Wilson*, 238 Ill. 2d 519, 570 (2010).

¶ 28 In this case, defendants attempted to prove partial payment on the promissory note. Payment on a promissory note is a defense that a defendant must prove by a preponderance of the evidence. *State Bank of East Moline v. Young*, 149 Ill. App. 3d 460, 463 (1986).

¶ 29 The record supports the trial court's finding that defendants failed to prove their defense of payment. Dolores testified that she kept records regarding defendants' payments on the promissory note. Dolores testified that, although for a certain time payments were made into the Harris Bank account, Gregory withdrew the money he had paid into that account and then stopped making payments. The record shows that the trial court found Dolores's testimony to be credible. The trial court is in the best position to evaluate the conduct and demeanor of the witnesses. *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35. We give great deference to the trial court's credibility determinations, and we will not substitute our judgment for that of the trial court. *Id.*

¶ 30 Contrary to defendants' assertion, the trial court did not disregard Gregory's testimony; rather, it found him to be incredible. The trial court noted inconsistencies in Gregory's testimony and stated that, although he claimed that he made "substantial payments, he was unable to produce any records of same, being cancelled checks, despite having constructive possession of these." The trial court found that Gregory's failure to produce these documents compelled it to find that "the evidence probably would have been adverse to his position." The trial court also found that the "[o]bvious inconsistenc[ies] adversely affected [Gregory's] credibility." Regarding defendants' defense of payment, the trial court found that "defendants failed to make payments on that note and, therefore, were in default." It is not the role of this court to substitute our judgment for that of the trial court on credibility determinations. See *id.* ¶ 37. Accordingly, we accept the trial court's credibility assessments.

¶ 31 In an effort to establish documentary proof of partial payment, defendants argue for the first time on appeal that, "[c]alculated, the total amount of payments that were made towards the 'note' in [plaintiffs' exhibit no. 16] was a total amount of $100,626.20." However, defendants have forfeited this argument because it was not properly presented to the trial court. The record shows that during closing argument defense counsel urged the trial court to credit defendants with "[w]hatever the total amount is contained in those documents [having] a guesstimation [*sic*] of $250,000." We determine that this and other similarly vague statements did not properly present the issue before the trial court. Accordingly, this argument is forfeited. See *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 31 (failure to raise an issue before the trial court forfeits that issue on appeal).

¶ 32    Even if defendants had preserved this issue in the trial court, they have forfeited it because they have failed to properly cite the record to support their argument. Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) provides that the appellant's brief shall include argument containing the appellant's contentions, the reasons therefor, and citation of the authorities and the pages of the record on which the appellant relies. Plaintiffs' exhibit No. 16 consists of hundreds of pages of defendants' bank records, yet defendants cite the entire exhibit to support their argument that they paid $100,626 on the promissory note. We have no obligation to sift through this voluminous exhibit to find a basis to reverse the trial court's finding of fact. See *Qualkinbush v. Skubisz*, 357 Ill. App. 3d 594, 616 (2005) (it is not a reviewing court's function or obligation to search the record for error). Accordingly, for this additional reason, defendants' argument regarding plaintiffs' exhibit No. 16 is forfeited. See *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303-B, ¶ 50.

¶ 33    Plaintiffs established through testimony and documentary evidence that defendants failed to make payments on the promissory note after March 2013. Defendants produced no evidence corroborating Gregory's testimony to support their defense of payment. Gregory testified that he could not obtain bank records from prior to 2005. This did not explain Gregory's failure to produce proof of payment on the promissory note executed in October 2009. "An unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his control." (Internal quotation marks omitted.) *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 504 (2005). Considering that defendants bore the burden of proof on their defense of payment, and that the evidence presented required the assessment of documentary evidence and witness credibility, we conclude that the trial court's finding that defendants failed to prove partial payment on the promissory note is not against the manifest weight of the evidence.

¶ 34                                    B. Motion for Directed Finding

¶ 35    Next, defendants argue that the trial court erred by denying their motion for a directed finding. In all cases tried without a jury, the defendant may move for a directed finding in his or her favor at the close of the plaintiff's case. 735 ILCS 5/2-1110 (West 2014). In ruling on such a motion, a court must engage in a two-step analysis: (1) the court must determine as a matter of law whether the plaintiff has presented a *prima facie* case, meaning whether the plaintiff presented some evidence on every element essential to the cause of action, and (2) if the plaintiff presented some evidence on every element, the court then must consider and weigh the totality of the evidence presented, including evidence that is favorable to the defendant. *527 S. Clinton*, 403 Ill. App. 3d at 52. "After weighing all the evidence, the court should determine, applying the standard of proof required for the underlying cause, whether sufficient evidence remains to establish the plaintiff's *prima facie* case." *Id.* (citing *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 276 (2003)). If the trial court finds that sufficient evidence remains to establish the plaintiff's *prima facie* case, the court should deny the defendant's motion and proceed with the trial. *Cryns*, 203 Ill. 2d at 276. Generally, evidence examined under the second prong must prove the plaintiff's case by a preponderance of the evidence. *Law Office of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 40. We will not reverse the trial court's decision denying a defendant's motion for a directed finding, unless it is contrary to the manifest weight of the evidence. *Id.* ¶ 39 (citing *Cryns*, 203 Ill. 2d at 276).

¶ 36 　　In this case, defendants argue that plaintiffs failed to establish a *prima facie* case to recover on the promissory note because there was no evidence of consideration. Defendants contend that such evidence was lacking because there was "no written documentary evidence that demonstrates [that] all $356,586.12 was delivered to Defendants." However, defendants fail to recognize that consideration for a negotiable note is presumed and that the burden is on the defendant to show its absence. *Burke v. Burke*, 89 Ill. App. 3d 826, 829 (1980). Thus, plaintiffs did not need to present any evidence of consideration to establish a *prima facie* case.

¶ 37 　　Although plaintiffs were not required to present evidence of consideration, they did so. Dolores testified that she delivered payment to defendants on the promissory note. In denying defendants' motion for a directed finding, the trial court found, based on Dolores's testimony, that plaintiffs established consideration. Accordingly, the trial court's decision denying defendants' motion for a directed finding is not against the manifest weight of the evidence.

¶ 38 　　Defendants cite *Leopold v. Halleck*, 106 Ill. App. 3d 386 (1982), for the proposition that "the presence of a negotiable instrument is vital in a suit for breach of a promissory note under the Uniform Commercial Code [section 3-104]." This is a truism, indeed, but it does not require a plaintiff to prove consideration in its case-in-chief to avoid a directed finding in defendants' favor.

¶ 39 　　　　　　　　　　　　　　　　　　C. Attorney Fees

¶ 40 　　Defendants argue that the trial court erred by awarding attorney fees. Defendants argue that, although section 6(E) of the promissory note allows for recovery of attorney fees, plaintiffs failed to meet the requirements of that section. Section 6 of the promissory note provides, in part:

　　　　"6. BORROWER'S FAILURE TO PAY AS REQUIRED

　　　　　　　　　　　　* * *

　　　　(B) Default

　　　　　　If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

　　　　(C )Notice of Default

　　　　　　If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all interest that I owe on that amount. ***

　　　　　　　　　　　　* * *

　　　　(E) Payment of Note Holder's Costs and Expenses

　　　　　　If the note holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees."

¶ 41 　　For the first time on appeal, defendants argue that the requirements of section 6(E) were not satisfied because the notice of default or "acceleration letter" failed to state the amount defendants owed and failed to account for the $250,000 they had already paid. Defendants' argument regarding the sufficiency of the notice of default is forfeited because they raise it for the first time on appeal. See *K&K Iron Works, Inc. v. Marc Realty*, *LLC*, 2014 IL App (1st)

133688, ¶ 25 (arguments not raised in the trial court are forfeited and cannot be raised for the first time on appeal). We also note that the acceleration letter was admitted into evidence without objection by defense counsel and states the full principal balance due on the promissory note. Thus, defendants' argument regarding the sufficiency of the acceleration letter has no merit.

¶ 42 Finally, defendants argue that the trial court's award of $51,014.78 in attorney fees is "totally and completely unreasonable." Defendants failed to contest the reasonableness of plaintiffs' claim for attorney fees in the trial court and failed to object to the admission of Brown's affidavit and attached time ledger regarding his fees. Accordingly, this issue is forfeited. See *id.*

¶ 43                                III. CONCLUSION

¶ 44 The judgment of the circuit court of McHenry County is affirmed.

¶ 45 Affirmed.