2020 IL App (1st) 191722-U
No. 1-19-1722

SECOND DIVISION
May 26, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ISABEL C. ESPARZA, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19 M1 100670 |
| | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Martin Paul Moltz, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Where the undisputed evidence at trial established that defendant credited plaintiff's account for all of the disputed charges, even in excess of what was legally required, and where plaintiff failed to establish any other damages stemming from defendant's alleged failure to credit her for fraudulent charges on her account, the trial court's judgment in favor of defendant was not against the manifest weight of the evidence.

¶ 2   Plaintiff, Isabel C. Esparza, appeals from the trial court's judgment in favor of defendant, Discover Financial Services, on plaintiff's complaint. Plaintiff appeals, *pro se*, arguing that the trial court ignored her, the trial court did not consider the evidence she presented at trial, and the

judgment for defendant was against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                                              BACKGROUND

¶ 4       Plaintiff initiated this small claims case in January 2019. In her complaint, plaintiff alleged that she reported a number of fraudulent charges on her Discover credit card to defendant. Defendant initially credited her account half of those charges, but then, three months later, reversed those credits and charged her the full amount. Plaintiff alleged that despite numerous attempts to resolve this issue with defendant, the charges remained on her account and continued to accrue interest. According to plaintiff, this negatively affected her credit and jeopardized her ability to close on a house she intended to purchase.

¶ 5       A bench trial was held on plaintiff's complaint. The record on appeal, as submitted by plaintiff, did not contain any reports of proceedings or trial exhibits. Defendant supplemented the record on appeal with a certified bystander's report pursuant to Supreme Court Rule 323(c) (eff. July 1, 2017) and the trial exhibits.

¶ 6       According to the bystander's report, in her opening argument, plaintiff made the following assertions: (1) she timely reported all of the fraudulent charges; (2) Discover initially refunded some, but not all, of the charges; (3) Discover later reinstated those charges; (4) Discover did not tell her that those charges would be reinstated; (5) she refused to pay the reinstated charges; (6) her credit score was negatively affected by the reinstated charges; and (7) as a result, she lost the opportunity to purchase a house and the corresponding $15,000 in down payment assistance. During her opening argument, she also presented the trial court with a document that purportedly showed her credit score had decreased. This document is not in the record on appeal.

¶ 7        After defendant made its opening statement, the trial court asked plaintiff if she would like to make any additional opening statements. Plaintiff declined and also declined to give any other direct testimony. She was then cross-examined by defendant. During that cross-examination, plaintiff testified that despite her earlier statements, she did, in fact, purchase the house on which she had a contract and that she received the $15,000 in down payment assistance. She also acknowledged that the document that she presented to the trial court in support of her allegation that her credit score had decreased was actually a "simulated" credit report that demonstrated what might happen to her credit score if she failed to make timely payments on a credit card she had with Chase and another creditor. That document did not mention defendant anywhere.

¶ 8        After defendant's cross-examination of plaintiff, the trial court asked plaintiff if she wanted to make any additional statements or present any other evidence as part of her case. She declined.

¶ 9        Defendant then called LaToya Boose. She testified that on April 9, 2018, plaintiff reported nine transactions on her account, totaling $504.86, as fraudulent: September 27, 2017, for $42.24; October 5, 2017, for $77.25; November 17, 2017, for $31.12; November 28, 2017, for $41.45; December 3, 2017, for $40.80; February 1, 2018, for $99.47; February 20, 2018, for $81.92; March 12, 2018, for $31.55; and March 30, 2018, for $59.06. Of these, the first five, totaling $232.86, were reported more than 60 days after the date of the statements on which they appeared.

¶ 10        After plaintiff reported these charges as fraudulent, defendant granted plaintiff provisional credit for all of these charges and the corresponding interest while it investigated whether the charges were, in fact, fraudulent. On April 30, 2018, defendant sent plaintiff letter

requesting that she complete and return an Affidavit of Fraud as part of defendant's investigation. Despite defendant's attempt to follow up with plaintiff in May 2018 for additional information to aid in the investigation, plaintiff never completed and submitted the Affidavit of Fraud. On July 11, 2018, defendant notified plaintiff by letter that it had determined that no fraud had occurred, and plaintiff would be responsible for the disputed charges. Thereafter, defendant reinstated the charges to plaintiff's account. Defendant did not, however, charge plaintiff any past interest on the disputed charges at that time. Plaintiff never made any payment on the reinstated charges.

¶ 11     In February 2019, shortly after plaintiff filed her complaint in this case, defendant decided to permanently credit plaintiff's account for the disputed charges, along with any corresponding interest.

¶ 12     Boose also testified that between April 2018, when plaintiff first reported the disputed charges, and February 2019, when defendant permanently credited plaintiff's account for the disputed charges, plaintiff's credit score improved by 24 points, from 652 to 676.

¶ 13     After defendant finished examining Boose, the trial court asked plaintiff if she wished to cross-examine Boose. Plaintiff again declined. Defendant then rested.

¶ 14     In closing, plaintiff first argued that she never received the Affidavit of Fraud defendant sent her. She also argued that she had been abused by defendant, defendant only reimbursed her $100, defendant caused her emotional distress, she was not a liar, defense counsel was a liar, and defendant and defense counsel should be punished for abusing defendant's customers. She went on to say that "if she closed on the home, it was because of her own efforts" and not because of anything defendant did to help. Finally, despite her earlier statement that she never received the

Affidavit of Fraud, she said that she submitted the Affidavit of Fraud to defendant through her mortgage lender.

¶ 15    Defendant argued in closing that plaintiff failed to timely report all of the disputed charges, as five of them were reported more than 60 days after the date of the statements on which they appeared, in violation of section 1666(a) of the Fair Credit Billing Act (15 U.S.C. § 1666(a)).    In addition, defendant argued that, under the Truth in Lending Act (15 U.S.C. §1643(a)), plaintiff was responsible for the first $50 of any fraudulent charge that might be made on her account, and only four of the disputed charges exceeded $50.    Despite this, defendant awarded her provisional credit for all of the charges.    It was only after plaintiff failed to cooperate in the investigation by submitting the Affidavit of Fraud that defendant was forced to conclude that the disputed charges were not fraudulent and reinstate the charges.    Plaintiff then refused to pay any of the charges.    After plaintiff filed suit, defendant again credited plaintiff's account for all of the disputed charges and corresponding interest.    Nevertheless, plaintiff insisted on proceeding to trial.

¶ 16    Defendant further argued that plaintiff lied at trial when she represented that the disputed charges caused her to be unable to close on her house or to receive the $15,000 in down payment assistance.    Defendant also pointed out that plaintiff's credit score had actually increased, not decreased as plaintiff claimed, since the time she reported the charges.    In addition, defendant argued that plaintiff was not entitled to any emotional distress damages because this case arose out of contract.

¶ 17    The trial court offered plaintiff an opportunity for rebuttal, but plaintiff declined.

¶ 18    The trial court determined that plaintiff had failed to carry her burden of proof and entered judgment in favor of defendant.

¶ 19    Plaintiff then timely appealed.

¶ 20                            ANALYSIS

¶ 21    On appeal, plaintiff argues that the trial court ignored her and her evidence. Other than these contentions, plaintiff does not articulate any particular errors that she alleges occurred in the trial court. Rather, she simply recounts her version of events. Absent any other articulated errors, we take plaintiff's recitation of claimed facts to be an argument that the trial court's judgment was against the manifest weight of the evidence. Even giving plaintiff this benefit of the doubt, we conclude that plaintiff has failed to demonstrate any reversible error or that the trial court's judgment was against the manifest weight of the evidence.

¶ 22    Before discussing the merits of plaintiff's contentions, we note that defendant requests that we strike plaintiff's brief for failing to comply with various requirements of the Illinois Supreme Court Rules, namely, she has failed to cite or reference the record in support of her contentions in violation of Supreme Court Rule 341(h)(7) (eff. May 25, 2018). Defendant also argues that we should disregard documents included in plaintiff's appendix that were not included in the record on appeal. Although plaintiff has chosen to proceed *pro se* on appeal, she must still comply with the Illinois Supreme Court Rules. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. We agree that plaintiff has failed to strictly comply with Supreme Court Rule 341(h)(7) and included in her appendix documents that are not found in the record in violation of Supreme Court Rule 342 (eff. Oct. 1, 2019). We do not, however, believe that striking plaintiff's entire brief is necessary. Rather, plaintiff's failure to cite to the record in support of her contentions will be addressed as necessary below as part of our discussion of plaintiff's contentions. In addition, we will simply disregard any documents that plaintiff included in her appendix that were not a part of the record. See *Keener v. City of Herrin*, 235 Ill. 2d 338, 346

(2009) (parties on appeal may not rely on matters outside of the record, and where a party's brief violates that rule, the appellate court may either strike the brief or disregard the offending material).

¶ 23    Turning to the merits, the trial court's rulings following a bench trial will be reversed only if they are against the manifest weight of the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *Id.*, quoting *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001). The trial court, as the trier of fact in a bench trial, is in the best position to "observe witnesses, judge their credibility, and determine the weight their testimony should receive." *Vician v. Vician*, 2016 IL App (2d) 160022, ¶ 27. If there is any evidence in the record that supports the trial court's judgment, the judgment should be affirmed. *Id.*

¶ 24    With respect to plaintiff's articulated claims of error—that the trial court ignored her and her evidence—plaintiff has waived these contentions. Although she explicitly states that the trial court ignored her and her evidence, she does not make any further argument in support of these contentions. She does not identify what evidence the trial court ignored or what arguments or statements she wanted to make to the trial court that were ignored. She also does not cite to anything in the record or any legal authority to support her contentions. For these reasons, she has waived these contentions. See Ill. S. Ct. R. 341(h)(7) (requiring that the argument section of appeals briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) [citation], resulting in waiver."); *Thrall*

*Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 25        Even putting waiver aside, there is no merit to plaintiff's claims. With respect to her claim that the trial court ignored her, the record demonstrates that the trial court gave plaintiff a number of opportunities to make any statements and present any evidence she desired, but that plaintiff declined every one of those opportunities. Aside from making a brief opening statement and presenting a single document, plaintiff declined to offer any direct testimony of her own, call any witnesses, cross-examine Boose, present any other evidence, or offer rebuttal argument in closing. In addition, as mentioned, plaintiff offered only a single document as evidence at trial: a "simulated" credit report that reflected what would happen to plaintiff's credit score if plaintiff failed to make timely payments on her Chase credit card. Because that document had nothing to do with plaintiff's account with defendant or the disputed charges, it was irrelevant to the dispute between the parties. Given that the trial court provided plaintiff with numerous opportunities to argue or present evidence and plaintiff declined to present any evidence other than a single, irrelevant document, we cannot conclude that the trial court ignored her or erred in not affording any weight to her document. To the extent that plaintiff is claiming that the trial court should have credited her opening statement over the evidence presented by defendant, such an argument goes to the question of whether the trial court's judgment was against the manifest weight of the evidence, which we address next.

¶ 26        The remainder of plaintiff's brief relates to the question of whether the trial court's finding in favor of defendant was against the manifest weight of the evidence. In her brief,

plaintiff argues that defendant only credited her $101.00 of the disputed charges, but then months later reinstated all of the charges. Plaintiff claims that she timely submitted the Affidavit of Fraud as requested. She also claims that she attempted to resolve this issue with defendant on numerous occasions but that defendant refused to provide her with an address of a physical location to speak with someone or would hang up on her. According to plaintiff, in November 2018, at the closing of her home, she learned that her credit score had decreased by 100 points and that she was forced to cancel the closing. She then worked with her mortgage lender and defendant to resolve the issue. She was required to resubmit the Affidavit of Fraud and to pay $365 of the disputed charges. It was only then that her credit score improved.

¶ 27        Aside from her assertion that she was initially given a credit by defendant and that the charges were later reinstated, plaintiff's version of events is either unsupported by or directly contradicted by the evidence on the record. In fact, many of the facts that she argues on appeal, she did not even argue to the trial court. Specifically, there is nothing in the record that supports her contentions that she was only credited $101, timely submitted the Affidavit of Fraud, attempted to resolve the issue with defendant, requested a physical address for defendant, was hung up on by defendant's employees, suffered a 100-point decrease in her credit score, had to cancel the closing on her house, resubmitted the Affidavit of Fraud, or paid $365 of the charges.

¶ 28        Rather than supporting plaintiff's contentions on appeal, the uncontradicted evidence presented at trial was that plaintiff did not timely report five of the nine disputed charges, did not complete the Affidavit of Fraud, refused to pay any of the charges after they were determined not to be fraudulent, was ultimately credited all of the disputed charges and corresponding interest, purchased the house she intended to purchase with the $15,000 down payment assistance, and increased her credit score. Based on this evidence, there is no basis on which to conclude that

the trial court's judgment in favor of defendant was against the manifest weight of the evidence, because there was no evidence that defendant wrongfully failed to credit plaintiff or that plaintiff suffered any damages as a result of defendant's actions.

¶ 29    Moreover, as defendant argued in the trial court and on appeal, it appears that plaintiff was credited far more than she was entitled to. Specifically, under section 1666(a) of the Fair Credit Billing Act (15 U.S.C. §1666(a)), plaintiff had 60 days after the date of the statements on which the disputed charges appeared to report the charges as fraudulent to defendant. In addition, section 1643(a) of the Truth in Lending Act (15 U.S.C. §1643(a)) makes the cardholder responsible for the first $50 of every fraudulent charge. Plaintiff did not timely report five of the nine charges—those occurring between September 27, 2017, through December 3, 2017, and totaling $232.86—as fraudulent to defendant. Accordingly, defendant was under no obligation to credit plaintiff for these charges. Of the remaining four charges, one of them—$31.55 on March 12, 2018—was less than $50, making it plaintiff's obligation, regardless of whether it was fraudulent. Thus, only three of the disputed charges were both timely reported and exceeded $50—February 1, 2018, for $99.47; February 20, 2018, for $81.92; and March 30, 2018, for $59.06. Assuming that these charges were, in fact, fraudulent, and after subtracting the first $50 of each of these charges, defendant was legally obligated to credit plaintiff with only $90.45.[1] Despite this, defendant credited plaintiff's account with the full amount of all nine charges, for a total of $504.86.

¶ 30    In sum, given that the evidence was undisputed that defendant credited plaintiff for all of the disputed charges, even where plaintiff did not cooperate in the investigation of the charges,

---

[1] The amounts remaining after subtracting the first $50 of each charge are as follows: $99.47 - $50 = $49.47. $81.92 - $50 = $31.92. $59.06 - $50 = $9.06. Adding those amounts together results in $90.45 ($49.47 + $31.92 + $9.06 = $90.45).

the charges were determined to not be fraudulent, plaintiff was not legally entitled to a full credit of all charges even if they were fraudulent, and plaintiff did not suffer any other damages as a result of the disputed charges, the trial court did not err in entering judgment in favor of defendant.

¶ 31                                             CONCLUSION

¶ 32        For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 33        Affirmed.