2026 IL App (2d) 260023-U
No. 2-26-0023
Order filed June 11, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_In re_ MARRIAGE OF
ASHLEY STARR, Petitioner-Appellee,
and MICHAEL STARR, Respondent-Appellant.

Appeal from the Circuit Court of McHenry County.
Honorable Jeffrey J. Altman, Judge, Presiding.
No. 21-DV-640

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    _Held_:   The trial court's finding that a modification of the parenting schedule was not in the minor child's best interest was not against the manifest weight of the evidence. Therefore, we affirm the court's order granting petitioner's motion for a directed finding.

¶ 2    Respondent, Michael Starr, appeals from the trial court's grant of a directed finding in favor of petitioner, Ashley Starr, on his motion to modify the parties' allocation judgment, which sought additional parenting time over the summer with the parties' minor child. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    Respondent and petitioner were married in October 2015, and they had one child together, K.S., who was born in August 2016. On December 5, 2022, the circuit court dissolved the parties' marriage. Along with the dissolution judgment, the court entered the parties' marital settlement

agreement and an allocation judgment, which allocated parental responsibilities and parenting time. With respect to K.S.'s summer vacation, the allocation judgment provided that both petitioner and respondent would have K.S. for up to two non-consecutive weeks during K.S.'s summer breaks (summer break was defined as commencing one week after the last school day of the school year until one week before the first school day of the new school year).

¶ 5 On October 9, 2024, respondent moved to modify the allocation judgment. The motion alleged several substantial changes since the entry of the parties' dissolution judgment, including that K.S. had frequently missed school because petitioner had taken him with her to fitness shows, that K.S. was older, that respondent had obtained his own residence with a bedroom for K.S., and that respondent had a new job that permitted work from home and schedule flexibility. Regarding K.S.'s best interests, the motion alleged that K.S. had expressed interest in spending more time with respondent; that petitioner worked outside of the home, thereby requiring that K.S. attend camp or be placed in childcare over the summer while with petitioner; and that K.S. would miss fewer school days with respondent. The motion sought a modification to the parenting schedule to grant respondent additional parenting time over the summer, during breaks from school, and during respondent's regular parenting time.

¶ 6 On July 1, 2025, the parties entered an agreed order that modified the allocation judgment in several ways, including a modification of where parenting time exchanges should occur and providing respondent up to three additional overnights with K.S. during winter break. Per the agreed order, the only unresolved issue from respondent's motion to modify the allocation judgment was with regards to summer parenting time.

¶ 7 Argument on the summer parenting time issue was heard by the trial court on the same day as the agreed order was entered. In respondent's case-in-chief, petitioner testified as follows. She

typically worked from home, with most work being done remotely; she "only [went] out of the house two hours a day, three days a week, three weeks a month" for work. K.S. was eight years old and would be nine in August. He would be entering fourth grade in the fall.

¶ 8 Petitioner confirmed that respondent's weekly visitation with K.S. was from 5 p.m. to 7 p.m. on Mondays and Wednesdays, and then every other weekend from Friday at 5 p.m. until Sunday at 5 p.m. On the Monday and Wednesday visitations, respondent would drive from Chicago to Crystal Lake for his two-hours of parenting time.

¶ 9 Regarding summer parenting time, counsel asked her if she and respondent had discussed his wants for the summer, and she responded that he "only tells me he wants 50/50" without providing timelines or suggestions on how to achieve an even division. They did not come to an agreement on summer parenting time during mediation.

¶ 10 At the time of the hearing, both parents were permitted to take two non-consecutive weeks with K.S. over his summer break, totaling four weeks of the summer break, which left four weeks of summer break on the parties' normal parenting schedule. Petitioner agreed that respondent was seeking an additional two weeks of time with K.S. over his summer break, which meant an additional 10 to 12 days of parenting time beyond what he had under the normal parenting schedule (which granted him parenting time with K.S. every other weekend).

¶ 11 Petitioner did not believe it was in K.S.'s best interest to modify the summer parenting schedule to grant respondent up to 12 more parenting days. She cited K.S.'s need for a routine and schedule, stating that a change in schedule takes him "three days to recover," leaving him whiny, tried, and snappy. She also cited his involvement with school friends and groups near her home. She specifically cited K.S.'s involvement in technical soccer practices, which were already missed with his overnights on the current parenting schedule. She was concerned about respondent's

ability to accommodate K.S.'s extracurricular needs over the summer. If other opportunities arose with K.S. over the summer, she was "one thousand percent" concerned that respondent would not allow K.S. to do what he wanted if it conflicted with what respondent wanted. She believed it was in K.S.'s best interest to keep K.S.'s current summer schedule.

¶ 12   Respondent testified as follows. He currently lived in Chicago. He had previously lived in his father's basement in Algonquin, following the parties' divorce. While living with his father, he did not have a separate room for K.S. to sleep in, but at his new home, K.S. had his own room.

¶ 13   At the time of the divorce, respondent was working remotely in the sales industry, and the job required a lot of time on the phone with clients. He now had a different job as a sales engineer, with a schedule that was "essentially whatever I make it, Monday through Friday." He could work in the office or from home. He claimed that he had to devote only two to three hours a day to his regular tasks and that he had "unlimited PTO," meaning he would take vacation time whenever and for however long he wanted. The only limitation on his schedule and vacations was "hitting [his] numbers and proposing and closing on deals."

¶ 14   Respondent stated that, in the years since the parties' divorce, he and K.S.'s relationship had evolved. They "truly enjoy spending time together." They had a boat in Chicago, and they liked to go to museums and go out to eat. K.S. would go on scooter rides on the Chicago Riverwalk. K.S. had gotten older and "more adventurous."

¶ 15   Respondent believed that it was in K.S.'s best interest to have additional time with him over summer because K.S. had expressed that he wanted to spend more time with respondent. Counsel objected to this statement (presumably as hearsay), and the trial court sustained the objection. Respondent believed that his new circumstances benefited K.S., and he noted that he had given up his position as a soccer coach, which he had held for over 15 years, to have more

time to spend with his son. K.S. would see respondent's mom, who was "in town." K.S. also had friends near where respondent lived, maybe 10 to 15 minutes away. He named four: Cole, Kayla, Ethan, and C.J. Respondent did not believe that a modification to the summer schedule would upset K.S.'s routine and stability. He did not believe that technical soccer practices occurred over the summer. Respondent believed that, in sum, a modification of the parenting schedule was in K.S.'s best interest because he had a home and bed for K.S., he was no longer coaching soccer for 15 to 20 hours a week, K.S. was older, and he had a new job.

¶ 16    Following respondent's testimony, petitioner orally moved for a directed finding. Petitioner argued that respondent had not provided "a scintilla of evidence of any actual changed circumstances." Regarding K.S.'s best interest, petitioner argued that evidence from the last six months showed that respondent placed his needs ahead of K.S.'s, such as prioritizing his parenting time over a birthday party to which K.S. had been invited. Thus, petitioner argued that (1) respondent had failed to make a *prima facie* showing of a change in circumstances, and (2) respondent had failed to make a *prima facie* showing that a modification was necessary to serve K.S.'s best interests. The trial court took the issue under consideration, and the hearing concluded.

¶ 17    On July 8, 2025, respondent moved to reconsider the trial court's ruling sustaining the objection to him testifying that K.S. wished to spend more time with him.

¶ 18    On July 14, 2025, the trial court heard and granted petitioner's motion for a directed finding and denied respondent's motion to reconsider as moot (while also saying that had the motion for a directed finding been denied, it would have granted the motion to reconsider). The court stated that it agreed with respondent that the hearsay testimony of K.S. could be admissible to show his state of mind, and therefore it reconsidered its ruling and found such testimony should have been allowed. The court continued, however, that it did not find a change in circumstances based on the

evidence presented in this case, and therefore it did not reach the issue of K.S.'s best interests, to which K.S.'s wishes—and thus the hearsay testimony—would be relevant.

¶ 19 On August 8, 2025, respondent moved to reconsider the trial court's directed finding. He contended (1) that he had shown a change in circumstances sufficient to support a modification of the parenting schedule and (2) that his case also presented a request for a minor modification, which did not require a showing of a change in circumstances.

¶ 20 Following a hearing, the trial court denied respondent's motion to reconsider on December 17, 2025. The court reiterated that the evidence did not demonstrate a change in circumstances, but this time the court continued to the second step of the modification analysis, namely, the child's best interests: "Even were the Court to find that a change in circumstance had occurred, the respondent failed to establish that the modification requested would serve the best interest of the minor child." The court specifically addressed respondent's hearsay testimony that K.S. wanted to spend more time with him, stating:

> "The Court notes that the respondent was not allowed to testify and assert the child's wishes at that hearing and considers that as evidence of a single factor, which the Court might consider with regard to best interest.
>
> And even assuming the testimony would be in favor of the modification, the totality of the evidence does not or did not establish by a preponderance of the evidence that modification would be in the child's best interest."

The court continued that it also found that the requested modification of 12 additional overnights was not a minor modification. Accordingly, it denied the motion to reconsider. Respondent timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22     Respondent argues that the trial court erred in granting a directed finding in favor of petitioner because he presented sufficient evidence of a change in circumstances to modify the parenting schedule, which served the best interests of K.S. He argues that, alternatively, the modification of the parenting schedule did not require a change in circumstances, because the change was minor. For the following reasons, we affirm because, regardless of whether respondent established a change in circumstances or whether the modification was minor, the court's best interests determination was not against the manifest weight of the evidence.

¶ 23     In a civil non-jury case, a defendant (or responding party) may move for a directed finding at the close of the plaintiff's (or petitioning party's) case. 735 ILCS 5/2-1110 (West 2024); see *In re Estate of Coffman*, 2023 IL 128867, ¶ 51 (reviewing a directed finding against the petitioners). "In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." 735 ILCS 5/2-1110 (West 2024).

¶ 24     The analysis of a section 2-1110 motion for a directed finding is two-part: first, the court must determine, as a matter of law, whether the plaintiff presented a *prima facie* case, that is, "at least 'some evidence on every element essential to [the plaintiff's underlying] cause of action' "; and second, if there is a *prima facie* case presented, the court considers the totality of the evidence, weighs the evidence, determines the credibility of the witnesses, and draws reasonable inferences therefrom. *In re Estate of Coffman*, 2023 IL 128867, ¶¶ 52-53. After evaluating the totality of the evidence in step two, the court must find that sufficient evidence was presented; if not, the court should grant the motion and enter judgment dismissing the action. *Id.* ¶ 54.

¶ 25     A grant of a directed finding after the second step will be overturned only if it is against the manifest weight of the evidence. *Id.* Likewise, this court reviews modification judgments,

including the determination of a child's best interests, under the manifest weight of the evidence standard. *In re Marriage of Royer*, 2025 IL App (2d) 240378, ¶ 35. A judgment is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent or the judgment is arbitrary, unreasonable, or not based on the evidence. *Vician v. Vician*, 2016 IL App (2d) 160022, ¶ 27. Here, because the court found the totality of the evidence did not establish that the requested modification served K.S.'s best interests, our standard of review is the manifest-weight-of-the-evidence standard.

¶ 26    Under section 610.5(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610.5(c) (West 2024)), a modification of the parenting plan generally requires a finding by the preponderance of the evidence that a substantial change has occurred in the circumstances of the child or of either parent and a modification is necessary to serve the child's best interests. However, a showing of a change in circumstances is not necessary if the modification "constitutes a minor modification" and the modification is in the child's best interest. *Id.* § 610.5(e)(2). Notably, both bases for modification require that the modification be in the child's best interest.

¶ 27    Section 602.7(b) of the Act provides a non-exclusive list of factors for the court to consider in determining a child's best interests for purposes of allocating parenting time, including the wishes of each parent, the wishes of the child, any prior agreement relating to parenting, the child's needs, the child's adjustment to his home, school, or community, and the distance between the parents' residences. *Id.* § 602.7(b)(1)-(17). A court is not required to make an explicit finding or reference to each of the statutory factors. *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43.

¶ 28    Here, respondent's arguments, both that he presented sufficient evidence of a change in circumstances and that evidence of a change of circumstances was unneeded, are foreclosed by the trial court's finding that the requested modification of the parenting schedule was not in K.S.'s best

interests. The court heard competing testimony from respondent and petitioner regarding K.S.'s best interests. On the one hand, respondent testified that he had more time and space for K.S. now than at the time of the dissolution judgment, that K.S. had friends and family in Chicago, and that he did not believe the change would disrupt K.S.'s schedule or cause him to miss soccer practices. On the other hand, petitioner testified that schedule changes disrupted K.S.'s routine, leaving him whiny and tired for days, that K.S. was involved with school friends and groups near her home, and that she was concerned about respondent's ability to put K.S.'s wants above his own when their wants conflicted, including with K.S.'s summer activities.

¶ 29    Importantly, trial courts are in the best position to review the evidence and assess the credibility of the witnesses (*In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004)), and consequently their decisions regarding the allocation of parenting time are to be accorded great deference (*In re Marriage of Whitehead & Newcomb-Whitehead*, 2018 IL App (5th) 170380, ¶ 15). Where, like here, the two witnesses present conflicting testimony and beliefs, we generally defer to the court's findings. We note that, under the terms of the allocation judgment, K.S. spent the majority of his time with petitioner and attended school in her district. Therefore, it was reasonable for the court to credit petitioner's testimony regarding K.S.'s routine, school friends, and activities.

¶ 30    As to respondent's excluded testimony that K.S. had expressed a desire to spend more time with him, the court addressed that testimony and reasonably stated that it went to only one factor of K.S.'s best interests (see 750 ILCS 5/602.7(b)(2) (West 2024) (the wishes of the child)). Even if the testimony had not been excluded, it was still subject to the trial court's assessment of credibility and weight in the context of the totality of the evidence. In addition, respondent's alleged changes in circumstances did not necessarily serve K.S.'s best interests. For instance, although it was a change for respondent to move from Algonquin to Chicago, that placed more

distance between him and petitioner's home in Crystal Lake, which could have reasonably weighed against the requested modification being in K.S.'s best interest (see *id.* § 602.7(b)(9) ("the distance between the parents' residences the cost and difficulty of transporting the child *** and the ability of the parents to cooperate in the arrangement"). And, while having a separate room for K.S. was undeniably a positive change for when respondent had overnights with K.S. on the set parenting schedule, that change did not, *ipso facto*, mean that increasing respondent's parenting time was in K.S.'s best interest.

¶ 31    In sum, we cannot say the opposite conclusion on the trial court's best interests determination was clearly evident. Accordingly, the court did not err in granting the directed finding in favor of petitioner on respondent's motion to modify the allocation judgment.

¶ 32                          III. CONCLUSION

¶ 33    For the reasons stated, we affirm the order of the circuit court of McHenry County granting petitioner's motion for a directed finding.

¶ 34    Affirmed.